**JAMCO, INCORPORATED, an Oklahoma corporation, and A. D. Wilkinson, Appellants,**

v.

**Theodore F. CARLSON, and Carlson Manufacturing Co., a Colorado corporation, Appellees.**

**No. 6140.**

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1959.

---

Duke Duvall and Jerry J. Dunlap, Oklahoma City, Okl. (Tom S. Williams, Oklahoma City, Okl., was with them on the brief), for appellants.

Philip H. Sheridan, Denver, Colo. (Emory L. O'Connell, Denver, Colo., was with him on the brief), for appellees.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellees-plaintiffs [1] sued for the infringement of three patents relating to steering gear idler arm assemblies of automobiles. Appellants-defendants [2] asserted that the patents were invalid because of lack of invention and that there was no infringement. The trial court upheld validity, found and enjoined infringement, and ordered an accounting. Later Jamco was found to be in contempt for violation of the injunction.

The steering mechanism of most automobiles consists of a steering shaft extending downwardly at an angle, ordinarily on the left side of the forward portion of the automobile. On the upper end of the steering shaft is a steering wheel controlled by the driver. At the lower end is a crank arm which moves pivotally upon the turning of the steering shaft. A drag link is connected at one end to the outer end of the crank arm and at the other end is supported by an idler arm usually attached by a bracket arrangement to the frame on the right side of the car. In some instances the drag link is supported by an idler arm positioned at about the center of the automobile. In either arrangement, the idler arm is pivotally supported from the automobile frame by a bracket to which the idler arm is coupled by one of several different types of pivotal assemblies.

The various automobile manufacturers provide their own particular designs of idler arms and brackets. Upon use, the pivotal assembly provided by the manufacturer becomes worn and loose with

---

1. Hereinafter referred to as Carlson. The patents are owned by Carlson who manufactures the devices covered thereby through his wholly-owned corporation, Carlson Manufacturing Company.

2. Hereinafter referred to as Jamco. Wilkinson is the principal officer and stockholder of Jamco, Incorporated.

340

resulting rattles, loss of wheel alignment, and reduced safety in the operation of the steering mechanism. The purpose of the devices in litigation here is to provide a satisfactory idler arm assembly.

The three patents upon which the infringement claims are based are Carlson No. 2,689,756, Carlson No. 2,809,049, and Pritchard No. 2,773,697.[3] Each patent covers an idler arm assembly. The differences in the steering mechanisms of automobiles are such that one type of idler arm assembly will not suffice for all makes of cars. Speaking generally, the devices manufactured under these patents consist of a ball bearing assembly, a resilient grease seal ring and various washers, all arranged in distinctive combinations which vary in the different patents and which are designed to meet the conditions found in different automobiles. The evidence is that these idler arm assemblies produce a desirable result in minimizing friction, play and looseness in the steering mechanism and in thereby increasing the safety of the steering mechanism.

Jamco asserts that these devices do not constitute invention, were anticipated by the prior art, and at the most show only mechanical improvements which should have been obvious to a person having ordinary skill in the art.

At the trial the testimony relating to the invalidity of the patents was that of two witnesses, each of whom stated as his conclusion that none of the patents constituted invention and that as to each the subject matter should have been obvious to a skilled mechanic. Neither witness gave any understandable testimony as to the state of the prior art upon which he based his conclusions and neither supported his conclusions by any reference to prior patents or other documentary or physical evidence bearing upon the problem. The conclusionary testimony which they gave is insufficient to establish either prior use or that the subject matter would have been obvious to a skilled mechanic.[4] Such oral testimony relating to a regularly patented device is open to grave suspicion and even though the witnesses be accepted as of the highest character the value of their testimony is open to serious question.[5] The burden of establishing the invalidity of a patent rests upon the party asserting it,[6] and he must establish that invalidity by clear and convincing proof.[7]

The failure of Jamco to adduce evidence of facts, as opposed to conclusions, placed the trial court and places this court in a difficult position. Anticipation is not established. The crucial issue is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[8]

The dividing line between what results from mechanical ability and what displays inventive genius is ill-defined. Perhaps no hard and fast definitive rule can or should be established. We have here combination patents utilizing such well and commonly known elements as bearings, grease seals, washers, bushings, nuts and bolts. In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151, and 152, 71 S.Ct. 127, 129, 95 L.Ed. 162, it was said that "the concept of invention is inherently elusive when applied to combination of old elements" and that

---

3. The Pritchard patent was assigned to Carlson and he is now the owner thereof. These patents will hereinafter be referred to as patents No. 1, No. 2, and No. 3, respectively.

4. Cf. Smith v. Hall, 301 U.S. 216, 222, 57 S.Ct. 711, 81 L.Ed. 1049.

5. Cf. Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153.

6. 35 U.S.C. § 282.

7. Consolidated Electrodynamics Corporation v. Midwestern Instruments, 10 Cir., 260 F.2d 811, 815.

8. 35 U.S.C. § 103.

"courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." In that case the district court, 78 F.Supp. 388, and the court of appeals, 6 Cir., 179 F.2d 636, based invention of a grocery store cashier's counter upon an extension of that counter and allowed a combination patent. The Supreme Court reversed, holding that as a matter of law the extension of the counter was insufficient to sustain invention.

The situation here is much more complex.[9] The record shows that the idler arm assemblies of automobile manufacturers become unsatisfactory after wear and present peculiar and difficult repair problems. The devices produced under the Carlson patents bring about an old result, the proper functioning of the steering mechanism, in a facile, economical, efficient and improved manner.[10] The arrangement is novel and the effect useful.[11] While known elements are employed to attain the objective, the proper arrangement and use of those elements are inherent in each patented device. An examination of these devices does not convince us that the subject matter as a whole would have been obvious to one skilled in the art. The record presents no facts, as opposed to conclusions, which establish such obviousness. The Carlson devices filled a want arising from a difficult problem, entered into immediate use, and met with substantial commercial success.[12]

Recognizing that patentability is a question of law for the court,[13] we cannot say that here there is a gadget as opposed to an invention. Certainly in a particular environment, the steering mechanism of motor vehicles, the peculiar and difficult problem of stabilizing that mechanism and protecting it from undue wear is solved in an expert, inexpensive and effective manner which attains an improved result. If the distinctive arrangement of the known elements would be apparent to a skilled mechanic, such fact is established neither by an examination of the devices nor by the evidence adduced at the trial. From the record presented to us the novel and distinctive combinations which make up the three patents in question require "greater skill and higher thought than would

9. For example, claim 4 of patent No. 3 reads thus:

"A support attachment for interconnecting a steering idler arm and an idler arm bracket having a planar lower surface with a generally vertical pivot shaft forming a pivot axis between the arm and bracket, said support attachment comprising a substantially right angular rigid member having a vertical and a horizontal leg, clamp means at the upper end of the vertical leg for rigid attachment to the idler arm in spaced relation to the pivotal connection between the idler arm and idler arm bracket, the horizontal leg having an upstanding flange on the upper surface thereof and forming a generally cup-shaped area, a bearing member disposed in said cup-shaped area and having the upper surface area thereof disposed in substantially a single plane above the upper edge of the flange with the periphery thereof being substantially co-extensive with the periphery of the lower surface of the idler arm bracket for engagement therewith, said bearing member having a centrally disposed recessed area, and an upwardly extending projection in the bottom of the cup-shaped area and extending into the recessed area of the bearing member for preventing lateral displacement of the bearing member, the upper surface area of said bearing member adapted to engage the unaltered lower surface of the idler arm for substantially precluding relative pivotal movement between the idler arm and idler arm bracket except about the vertical pivot shaft."

10. See Consolidated Electrodynamics Corporation v. Midwestern Instruments, Inc., 10 Cir., 260 F.2d 811, 816; Oliver United Filters v. Silver, 10 Cir., 206 F.2d 658, 662, certiorari denied 346 U.S. 923, 74 S.Ct. 308, 98 L.Ed. 416.

11. Cf. Helms Products v. Lake Shore Manufacturing Co., 7 Cir., 227 F.2d 677, 681.

12. Cf. Harris v. National Machine Works, 10 Cir., 171 F.2d 85, 89, certiorari denied 336 U.S. 905, 69 S.Ct. 491, 93 L.Ed. 1070.

13. Mahn v. Harwood, 112 U.S. 354, 358, 6 S.Ct. 451, 28 L.Ed. 665.

be expected of an ordinary mechanic trained in the art."[14] In the circumstances, Jamco has not sustained the burden of overcoming the presumption of validity by clear and convincing evidence.

In its motion for new trial, Jamco relies on allegedly newly discovered evidence to show anticipation. Such evidence consists of prior patents and publications of automobile manufacturers and is said to require a holding that the patents are invalid. Jamco in its motion offered to pay the cost of a new trial. The motion was overruled.

The prior patents asserted to prove anticipation are:

Leighton No. 2,170,455
Shemorry No. 2,650,844
Traugott No. 2,805,878
Vann No. 1,647,821
Hawley No. 2,684,260
Dick No. 2,631,864

None of these patents was introduced in evidence or referred to at the trial. In the amended answer of Jamco, the Shemorry and Hawley patents are pleaded, along with other patents, as establishing anticipation. In opposition to the motion for new trial Carlson presented the affidavit of its patent expert that the other patents relied on are within patent classifications shown in the file histories of the patents in suit in connection with the prior art search of the patent examiners. This affidavit is not controverted. Evidence readily available at the trial may not be relied on, after an adverse decision, as newly discovered.

The prior publications set out in the motion for new trial are passenger car parts lists of automobile manufacturers. In regard to them the showing of diligence or pertinence is not impressive. Relevance is asserted only in connection with patent No. 2. The affidavit of the Carlson expert as to distinguishing features is uncontroverted.

Jamco contends that the well-known rule that a trial court's denial of a motion for new trial will be disturbed on appeal only when there is a plain abuse of discretion [15] is not applicable to patent litigation because of the public nature of the subject matter.[16]

An ordinary search of the Patent Office would have disclosed the patents upon which Jamco now relies. Two of these patents were set out in its answer. The lack of diligence, in the circumstances of this case, would alone have justified the denial of the new trial. More importantly, the showing made fails to convince us that, standing alone, it is sufficient to require a different result.[17] The motion for new trial was properly denied.

Carlson idler arm kits received in evidence and described in the testimony fall within the scope of one or more of the claims of the patents mentioned. These kits were extensively and profitably manufactured by Carlson in the period from 1953 to the trial of this case.[18] The kits may be divided into three general groups, each falling within a claim or claims of one of the three patents.

Prior to 1957 there was an oral agreement between Carlson and Jamco whereby Jamco marketed certain of the Carlson kits and Carlson marketed one of the Jamco kits which was usable in the same situations as kits made under the Pritch-

14. Cf. Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442, 446.

15. Gerson v. Anderson-Prichard Production Corporation, 10 Cir., 149 F.2d 444, 446–447.

16. See Borg-Warner Corporation v. Mall Tool Company, 7 Cir., 220 F.2d 803, 804, certiorari denied 349 U.S. 946, 75 S.Ct. 875, 99 L.Ed. 1272.

17. Union Bleachery v. United States, 4 Cir., 176 F.2d 517, 519, certiorari denied 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373; Chicago & W. I. R. Co. v. Chicago & E. R. Co., 7 Cir., 140 F.2d 130, 132, certiorari denied Chicago & E. I. R. Co. v. Grand Trunk Western R. Co., 322 U.S. 747, 64 S.Ct. 1157, 88 L.Ed. 1579.

18. In the period Oct. 1, 1956 to Sept. 30, 1957 gross sales amounted to approximately $152,000 and net profit to approximately $42,000.

ard patent. After Carlson acquired that patent, the marketing agreement with Jamco was terminated. Thereafter Jamco engaged in the manufacture and sale of kits which in physical appearance, structural organization, function, packaging, advertising, and instructions for use were either identical or remarkably similar to those of Carlson. It is a reasonable inference that by so doing Jamco was endeavoring to retain the market which it had for the Carlson products.

Jamco asserts that there is no infringement as to the idler arm kits which Carlson claims to be covered by patent No. 1 because the Jamco product uses a thinner neoprene grease seal washer than does Carlson and makes up for the loss of resiliency by the insertion of a metal coil spring. This spring is either an addition to one of the elements or an equivalent of one of the functions of an element of the patented device. Jamco's own expert admitted identity in function and operation.

■■ Infringement exists when a device incorporates in its structure and operation the substance of the patent and produces substantially the same effect in substantially the same way as that taught in the patent.[19] Infringement is not avoided by a difference in form when one appropriates the principle and mode of operation of the patented article and obtains its results by the same or equivalent means.[20] The accused device comes within this rule and infringes patent No. 1.

In the second group are devices made by Carlson under patent No. 2. This group has two subdivisions, one of which utilizes double sleeves and the other a single sleeve. Jamco makes no serious contention of noninfringement by its double sleeve devices. The combination of the two sleeves into one elongated sleeve performs the same functions with the same operative results. Accordingly, the uniting of the two elements into one does not avoid infringement.[21]

The third group consists of the idler arm assemblies covered by patent No. 3. The trial court found an infringement of claim 4 of that patent. Jamco bases its contention of noninfringement largely on the theory that the Jamco device is more nearly like a prior patent which was never introduced in evidence. Jamco produced no evidence controverting the testimony of the Carlson expert that there was infringement. After the trial Jamco modified this device and at the contempt hearing the court found that the modified device did not infringe. In these circumstances, we cannot say that the finding of infringement before modification was clearly erroneous.

■ After the judgment establishing validity and enjoining infringement, Jamco manufactured and sold modified products. As to those charged with infringement of patent No. 3, the court held that the modified device did not infringe and Carlson does not contest that ruling. As to the others, the modification consisted solely of the substitution of a nylon washer or bushing for a neoprene washer or bushing. The nylon element is substantially of the same shape, size, and dimension as the prior neoprene element. It differs only in color and degree of function. The claims of patents 1 and 2 are not predicated upon degree of function. The substitution of nylon for neoprene does not avoid infringement. The contempt order was proper.

Affirmed.

19. Merrill v. Builders Ornamental Iron Co., 10 Cir., 197 F.2d 16, 20.

20. Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442, 449.

21. See Walker on Patents, Deller's Ed., Vol. 3, § 462, p. 1698, and cases there cited.