**Raymond M. CARSON and Louis A. Rosproy, Appellants,**

v.

**Charles BLAND and B & D Distributing Co., Appellees.**

**No. 9329.**

United States Court of Appeals
Tenth Circuit.

July 10, 1968.

Jerry J. Dunlap, Oklahoma City, Okl. (Dunlap & Laney, Oklahoma City, Okl., on the brief), for appellants.

D. W. Falkenberg, Medford, Okl., Robert E. Shelton, Oklahoma City, Okl. (Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl. on the brief), for appellees.

Before JONES *, BREITENSTEIN and SETH, Circuit Judges.

JONES, Circuit Judge:

The appellants, Raymond M. Carson and Louis A. Rosproy, brought this suit for infringement of United States Letters Patent No. 2,918,310 against B & D Distributing Company and Charles Bland, the president and sole shareholder of B & D. Carson is the inventor and owner of the patent; Rosproy is Carson's exclusive licensee. The appellees denied infringement and asserted that the patent was invalid. The United States District Court for the Western District of Oklahoma, sitting without a jury, found that the patent in suit had not been infringed and that the Carson patent was invalid. Our initial consideration is of the validity of the patent. McCullough Tool Co. v. Well Surveys, Inc., 10th Cir. 1965, 343 F.2d 381; Sears, Roebuck & Co. v. Jones, 10th Cir. 1962, 308 F.2d 705.

The patented device, which is denominated "towing bar with wide-range hitch," provides a means by which two vehicles may be coupled in a rigid connection for towing purposes. This device is claimed to be an improvement over the traditional tow bar in that a suitable connection can be made even when the vehicle to be towed is not precisely positioned at the same level or at an exact distance behind the towing vehicle.

The Carson tow bar is comprised of an A-shaped frame, the wider end of which has a hinged connection to the bumper of the vehicle to be towed. When the device is not in use, it may be pivoted up on its hinges to a vertical position resting in front of the rear vehicle's grille. This pivoting feature allowes two vehicles to be connected even when they are not on the same level.

Because the side members of the A-frame do not quite converge, the front portion of the frame is truncated and open. Welded above and below this narrow portion are triangular plates which have the same dimensions as the front area of the frame. The addition of these plates creates a triangular-shaped socket which permits a hitching tongue to slide loosely either way through this open coupling member.

The front end of the tongue, which projects out of the A-frame through the triangular socket, may be equipped with any conventional type of hitching means which will cooperate with a similar hitching means on the rear of the towing vehicle. The opposite end of the tongue, which is at all times contained within the confines of the A-frame, is composed of a triangular-shaped head, the sides of which converge at the same angle as the side arms of the A-frame.

The operation of the Carson device is thus described in the appellants' brief:

"To place the device in operation, the towing vehicle is backed up into

a position in front of the vehicle to be towed * * * the A-frame is pivoted downwardly to a generally horizontal position and the tongue is partially extended from the A-frame. The tongue may then be swung either right or left * * * to facilitate the connection of the forward end of the tongue to the hitch of the towing vehicle. It should further be noted that the tongue may also be extended to various lengths from the A-frame, and the A-frame may be raised or lowered during the hitching operation * * *.

"When the forward end of the tongue is connected to the hitch of the towing vehicle * * * the towing vehicle is simply driven forwardly. The tongue is thereby further extended from the A-frame until the head on the tongue engages the female coupling member on the forward end of the A-frame to then make a rigid hitching device from the forward end of the tongue to the rear end of the A-frame. In other words, when the head on the tongue engages the female coupling member, the tongue can not then be swung right or left with respect to the A-frame."

Another feature of the Carson device involves two latch accommodation slots that are positioned on the hitching tongue so as to permit their cooperation with a conventional spring-biased latch fixture situated on top of the socket of the A-frame. When the tongue is drawn forward away from the vehicle to be towed and the head of the tongue is wedged snugly against the face of the socket, the latch automatically engages a slot in the tongue so that the tongue may not be retracted during a towing operation. A similar latch connection is formed when the tongue is fully retracted within the A-frame.

At the trial of this cause it was shown that none of the individual components of Carson's device are novel. The testimony of Carson and his expert established that the A-frame, the sliding telescopic tongue, the swinging tongue, and the wedged fitting are all old elements in the prior art. Also, the defendants submitted, and the court admitted, evidence illustrating the previous development of the wagon tongue principle. In describing the operation of an old wagon hitch, Mr. Bland testified: "[T]hey used the oak bent hound [1] which we see here or an A-frame hound, either one, and put a wedge-shaped tongue in it * * * it says in here that the pull is transferred through the wedge-shaped tongue to the hound."

In addition to the foregoing, several patents cited by the patent examiner further indicate the state of the prior art. The prior art patent, Holder No. 2,845,281, discloses a hitching device which, like the Carson patent, is designed to afford maneuverability, adjustability, and the capability of self-alignment through the use of cooperating coupling members equipped with triangular-shaped faces. This device is comprised of a triangular socket which is positioned on a transverse bar at the rear of the tow vehicle. The converging sides of the socket point toward the center of the tow vehicle, but openings are left at both ends of the socket to permit a hitching tongue to slide through. This sliding tongue is equipped at its rear portion with a triangular-shaped head which, when forced toward the tow vehicle, fits snugly into the A-shaped socket.

To put the Holder hitch in use, a pin which holds the triangular head of the hitching tongue in a stationary position during operation, must first be raised. With this done, the tongue is free to slide rearwardly toward the trailer to be towed. In this extended position, the tongue may be swung to the left or right facilitating a connection between the rear end of the tongue and the forward end of the trailer tongue. Self-

---

1. A wooden bar, of which there are two or more, connecting the front axle of a springless wagon with the shaft or tongue.

alignment takes place when the towing vehicle is backed up so that the triangular socket telescopes over the head of the hitching tongue. A loose tongue permanently attached to the rear vehicle will normally be swung sideways during this operation. When the head is securely seated within the triangular socket, a pin is placed through the socket and head to maintain the tongue in a fixed position in relation to the tow vehicle. This pin, and not the coupling socket and head, transmits the towing force during a towing operation.

Another patent cited before the patent examiner, Roos No. 2,378,504, discloses a towing device with an A-shaped frame that is hingedly connected to the vehicle to be towed. This device may be swung up into an out of the way position when not in use.

The Carson device, an assemblage of elements previously known and used, will be entitled to patent protection only if it will "promote the Progress of Science and useful Arts" Art. I, Sec. 8, U. S. Constitution. Congress has particularized the standard of patentability by requiring that an invention be endowed with the qualities of novelty, utility, and non-obviousness before being entitled to a legal monopoly. 35 U.S.C.A. Secs. 101–103. This standard of invention must be applied strictly "lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art," Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92, 62 S.Ct. 37, 41, 86 L.Ed. 58; and, with particular reference to the present suit, combination patent claims must be scrutinized "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Company v. Super-market Equipment Co., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162.

Of the various statutes setting forth the requirements of patentability, 35 U.S.C.A. Sec. 103 [2] is particularly applicable here. Under this section, the test of invention is whether the differences between the patent in suit and the relevant prior art are such that the new device would have been obvious at the time of invention to a person having ordinary skill in the art. Mott Corp. v. Sunflower Industries, Inc., 10th Cir. 1963, 314 F.2d 872. While the question of patent validity is one of law for the court to decide, Admiral Corp. v. Zenith Radio Corp., 10th Cir. 1961, 296 F.2d 708, the issue of obviousness must be resolved upon the basis of several factual inquiries:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545.

It is to be noted that it has long been the rule that the product of mere mechanical skill is not patentable. Hutchinson Mfg. Co. v. Mayrath, 10th Cir. 1951, 192 F.2d 110. This rule is in accord with the requirements of Section 103 in that, generally, whenever the mode of improving or creating a new device would have readily occurred to one skilled in the art, the device is the product of mere mechanical skill. Richards & Conover v. Leishman, 10th Cir. 1949, 172 F.2d 365. Even the conjunction of novelty and utility does not entitle a creation to patent protection if the device merely consists of an aggregation of old elements which are drawn from the public domain and which produce expected results.

2. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Griswold v. Oil Capital Valve Co., 10th Cir. 1967, 375 F.2d 532.

The application of these rules to the facts here leads to the conclusion that the prior art taught Carson how to accomplish his objective. The Holder patent teaches the aligning feature of wedge-shaped faces; the ancient wagon tongue, which was not cited before the patent office, demonstrates the facility of transmitting the towing force through these cooperating faces. In fact, some of these wagon tongues were retractable. The Roos patent illustrates a hingedly connected towing hitch. These teachings render the Carson device obvious to one skilled in the art. There is no error in the determination of the district court that the patent in suit is invalid.

An invalid patent can not be infringed. Consolidated Electro. Corp. v. Midwestern Instruments, 10th Cir. 1958, 260 F.2d 811. Therefore, the question of infringement need not be considered. The judgment of the district court in holding the Carson patent invalid is

Affirmed.

