The **EIMCO CORPORATION**, Appellant,

v.

**PETERSON FILTERS AND ENGINEER-ING COMPANY and Komline-Sander-son Engineering Corporation**, Appellees.

**No. 9806.**

United States Court of Appeals Tenth Circuit.

Dec. 30, 1968.

Rehearing Denied March 17, 1969.

Mark N. Donohue, New York City (Peter W. Billings and Robert R. Finch, Salt Lake City, Utah, and John F. Neary, Jr., New York City, with him on the brief), for appellant.

Walter D. Ames, Washington, D. C. (Richard E. Babcock, Jr. and Robert J. Lasker, Washington, D. C., and Phillip A. Mallinckrodt, Salt Lake City, Utah, with him on the brief), for appellees.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

This is a patent infringement suit in which the appellees, Peterson Filters and Engineering Company and Komline-Sanderson Engineering Corporation, allege infringement of Patent No. 3077990 and seek damages, together with injunctive relief prohibiting further infringement.[1] The objects of the patent are to overcome tracking and wrinkling problems encountered in the operation of a rotating endless filter belt. The trial court rejected a defense of invalidity and held the patent valid and infringed.

The patent discloses a device for the alignment of filter belts on an apparatus which is used in the sanitation and industrial fields to separate liquid from solids. In operation the filter belt is a part of a rotary drum filter machine, the drum being positioned in a tank containing the fluid to be separated and referred to in this litigation as "slurry". The drum is cylindrical in shape, with closed ends and a perforated surface. Spaced from the drum surface is a cleaning section consisting of a discharge roller and other rollers the number of which varies depending upon the type of machine used. The endless filter belt is looped over the drum and the discharge section assembly. Necessarily the belt is substantially longer than the circumference of the drum. For efficient operation all of the perforated portion of the drum, which is immersed in the slurry, must be completely covered by the filter belt to prevent the entry of the raw slurry into the drum and thence into the pipes and valves, thereby

---

1. The patent was issued to John G. Peterson on February 19, 1963, and later assigned to Peterson Filters and Engineering Company. Komline-Sanderson Engineering Corporation is an exclusive licensee under the patent, restricted to the field of sanitation and has a restricted right to sue for infringement.

causing the filter mechanism to become inoperative. By means of a rotary valve, a vacuum is created on the under side of the filter belt and the liquid phase of the slurry is drawn through the filter to the interior of the drum and the solids remain on the surface. As the drum rotates, the belt leaves the surface of the drum and passes over the rollers of the discharge system. At the first roller there is an abrupt change in the course of the belt which causes the solids to fall off. Thereafter the belt continues over additional rollers for cleaning and positioning for return to the drum surface and commencement of another filter cycle. Due to various causes, the filter belts when passing over the rollers have had a tendency to creep either to the right or left, preventing return of the belt to the drum head in a manner which would cover all of the perforated surface thereof. Such misalignment of the belt also causes a wrinkling which tends to prevent a satisfactory operation. The vacuum drum filter belt process was well known in the art at the time of the issuance of the Peterson patent, but the new element claimed in this combinaton

was a filter belt guide which continuously and automatically realigns the belt before it returns to the drum surface.[2]

The realignment device disclosed in the Peterson patent consists of two pairs of guide rollers or wheels with springs attached, mounted one adjacent each end of the last roller before the belt returns to the drum. These wheels bear against the beaded edges on the outer sides of the belt and force it laterally outward, away from the center. The tension creating the force of the guide rollers when engaging the beading is provided by adjustable attached springs. The assembled tensioning and guiding device includes means for adjusting the amount of lateral tension to be applied.[3] If the realignment device is mounted at the ends of a roller, sufficient force must be applied against the beading to cause the belt to slide across the roller in order to effect a realignment. The ultimate object of the Peterson device is to guide the filter belt in a smooth condition back to the drum for the purpose of covering all of the surface exposed to the vacuum.

2. The patent states that it is "an important object of the invention to provide a novel filter medium and mechanism for maintaining an endless filter medium centered on a rotary drum and through a discharge section spaced from the drum surface. The invention provides centering of the medium, eliminates wrinkling of the material of the filtering medium either on the drum or in the discharge section, and provides positive tracking for the medium onto the drum without training rods. The mechanism of the invention laterally stretches the filter medium, retarding blinding of its openings and provides for more complete cleaning of the filter medium prior to its return to the filter drum for additional filtering action."

3. The patent claims are as follows:
1. In a filter medium tracking and tensioning device for a rotary drum filter having a separate cake discharge section, an endless filter medium looped over the filter drum and extending through the cake discharge section, which filter medium includes a bead on each edge of the filter medium extending completely therearound, and a filter medium return

roller mounted adjacent the filter drum, the improvement which comprises means for tracking the filter medium back to said drum inclusive of a pair of rollers mounted adjacent each end of the return roller, each pair of rollers being mounted in substantial contacting relation and mounted with the filter medium therebetween and in position to bear against the bead at the edge thereof, each said pair of rollers being arranged to move laterally in respect to the path of travel of the filter medium, resilient means attached to said rollers in position so that the rollers bear against the bead at each side of the filter medium to stretch the filter medium therebetween and to center it in relation to the return roller and the filter drum, and means for supporting each pair of said rollers in position on said filter medium and biased against the adjacent bead at the edge thereof.
2. A device according to claim 1 in which each said pair of bead contacting rollers is spring biased laterally away from the filter medium so as to provide essentially uniform tensioning on the filter medium. (Claims 1 and 2 from patent.)

The trial court found that this element with the resilient means or springs attached to the guide rollers in position so that the rollers bear against the beads of the filter belt to tension and center the belt, as claimed in the Peterson patent, was not found in any of the prior art patents cited by the patent office during the prosecution of the Peterson application nor in any additional prior art cited by Eimco. Eimco does not question this finding.

The Eimco filter belt aligning mechanism is similar to that described in the Peterson patent. In operation the mechanism is mounted on both sides of the belt at a position between the rollers in the discharge section of the filter machine, or between the drum and the first roller, but not on the end of any roller. In some instances the guide wheels bear against the beaded edge of the belt only on the side that is in need of adjustment, but the contact relation between these two elements is substantially the same as that of the Peterson device. Eimco urges that the function of its device differs from that of Peterson in that its location between the rollers utilizes the principle of "planar action" in its operation, while the function of the Peterson patent is to cause a slippage or sliding of the belt across one of the rollers to obtain realignment. The spring tension necessary to obtain realignment when the device is positioned between the rollers is much less than when it is mounted on one of the rollers. It is not contended that the belt realignment result obtained is different in either instance.

The principal issues presented by Eimco are that the trial court erred in not holding the Peterson patent invalid, for failure to meet the tests of non-obviousness required by 35 U.S.C. § 103, non-infringement, and a file wrapper estoppel.

A patent is presumed to be valid and this presumption can be overcome only by clear and convincing evidence. Griswold v. Oil Capital Valve Co., 10 Cir., 375 F.2d 532; King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 10 Cir., 354 F.2d 533. Likewise, one asserting invalidity of a patent on the ground of anticipation has the same burden of proof. Griswold v. Oil Capital Valve Co., supra; McCullough Tool Co. v. Well Surveys, Inc., 10 Cir., 343 F.2d 381, cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851; Mott Corp. v. Sunflower Industries, Inc., 10 Cir., 314 F.2d 872.

Generally, when elements old in the art are combined together in a manner which secures a new and useful result or an old result in a more facile, economical and efficient manner, there is a patentable combination. McCullough Tool Co. v. Well Surveys, Inc., supra; Oliver United Filters, Inc. v. Silver, 10 Cir., 206 F.2d 658, cert. denied, 346 U.S. 943, 74 S.Ct. 308, 98 L.Ed. 416.

Utility, novelty, and non-obviousness are separate tests of patentability and all must be satisfied for a valid patent. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572.

The utility of the Peterson combination is not questioned, and Eimco recognizes that the use of the spring tension device to urge the guide wheels outwardly to align the filter belt as it progresses in the filtering cycle was not in the prior art. It contends, however, that the validity of the patent cannot be upheld on any single essential element, but that patentability must be determined on whether the combination as a whole would have been obvious to a worker having ordinary skill in the art at the time the alleged invention was made. This is a statutory law, and the law of this Circuit. 35 U.S.C. § 103;[4] see Gra-

---

4. 35 U.S.C. § 103 provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differenecs between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which

ham v. John Deere Co. of Kansas City, Missouri, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545; [5] Mott Corp. v. Sunflower Industries, Inc., supra. The trial court found that the prior art called to its attention, and the testimony of Eimco's expert witness to the effect that the substitution of a resilient means for a non-resilient means of tracking a filter belt was within the skill of the worker in the art, "did not overcome the indications in the record to the contrary and the presumption of the validity attaching to the patent."

■■■ Eimco's objection to this finding as we understand it, is that the trial court, in determining the "non-obvious" requirement, limited its inquiry to Eimco's failure to establish the lack of novelty required by Section 102. It is urged that utility or novelty are not necessary criteria in the determination of the Section 103 requirements. Obviousness is not to be determined by the lack of utility or novelty, but one of the factual tests contemplated by Section 103 is a comparison between the subject matter sought to be patented and the prior art in reaching a conclusion as to obviousness or non-obviousness under the statutory standards. In the *Graham* case the court said:

"We believe that this legislative history, as well as other sources, shows that the revision was not intended by Congress to change the general level of patentable invention. We conclude that the section was intended merely as a codification of judicial precedents embracing the Hotchkiss condition, with congressional directions that inquiries into the obviousness of the subject matter sought to be patented are a prerequisite to patentability.

"Approached in this light, the § 103 additional condition, when followed

realistically, will permit a more practical test of patentability. The emphasis on non-obviousness is one of inquiry, not quality, and, as such, comports with the constitutional strictures.

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, at 155, 71 S.Ct. 127 at 131 (340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162), the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined." See also Carson v. Bland, 10 Cir., 398 F.2d 423.

In determining the Section 103 issue the trial court made the inquiry as to the obviousness or non-obviousness of the subject matter as suggested by the Supreme Court. The determination of non-obviousness was not limited to a finding of lack of novelty. This is illustrated by a reference in its finding to the testimony of Eimco's expert witness and indications in the record to the contrary.

■ The trial court's complete and careful findings disclose that for the purpose of ascertaining whether the Peterson device would be obvious to a person having ordinary skill in the art, it measured the device with the prior art together with the record as a whole. As indicated in the Graham case, obviousness "to a person having ordinary skill in the art" is an illusive factual subject to be determined by the trial court. In

said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

5.  383 U.S. 19, 86 S.Ct. 694. With reference to the purpose of Sec. 103 the Supreme Court said: "Although we con-

clude here that the inquiry which the Patent Office and the courts must make as to the patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in the general strictness with which the overall test is to be applied."

recognizing the difficulties of Section 103 problems, the court warned that "what is obvious is not a question upon which there is likely to be uniformity of thought in every factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development." The difficulties referred to are questions of fact to be determined in the trial court. The courts agree that the ultimate question of validity is one of law, Griswold v. Oil Capital Valve Co., supra, but obviousness as referred to in Section 103 is a question of fact for the trial court, which determination should not be set aside in the absence of clear error. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672; McCullough Tool Co. v. Well Surveys, Inc., supra; Maytag Co. v. Murray Corp. of America, 6 Cir., 318 F. 2d 79. In Admiral Corp. v. Zenith Radio Corp., 10 Cir., 296 F.2d 708, we said: "On conflicting evidence the trial court held that the devices covered by the Zenith patents would not have been obvious to one of ordinary skill in the art. This is a finding of fact which cannot be set aside as clearly erroneous." The finding of non-obviousness is amply supported by substantial evidence, and we agree with the trial court that the presumption of validity has not been overcome. We find no language in Graham v. John Deere Co. of Kansas City, Missouri, supra, that requires a different approach to the non-obvious question than that made by the trial court, or that is contrary to our former decisions.

On the question of infringement, Eimco insists that its belt centering device is not within the teaching of the Peterson patent. It argues that the claims of the patent and the specifications restrict the mounting of the belt aligning device to the ends of the return roller; therefore, its mechanism, which in operation is mounted only between rollers at various unsupported expanses of the belt, is not an infringement. The Eimco device is in all respects similar to that claimed in the patent, including guide rollers with springs attached to them. In operation, the Eimco mechanism is located at places other than at the end of a roller, and the direction of the belt is changed by pressure of the guide wheels against the beaded edges before it reaches the roller.[6] But as the belt approaches the rotating drum its alignment is the same as that resulting from the action of the Peterson device.

The trial court, after a consideration of all the evidence, observing a demonstration of a model designed from the Peterson model, and viewing the Eimco apparatus in actual operation, found:

"While defendant's apparatus with guide rollers at locations other than that between the return roll and the preceding idler roll do not meet the literal terms of the claims, in that they were not mounted adjacent the ends of the return roller, the guide rollers at other locations in the path of travel of the belt perform substantially the same function as guide rollers mounted

6. The trial court in its findings described the Eimco mechanism in operation as follows: "The Eimco Edgetrack aligning devices have been located on its filters in every instance in a position at an otherwise unsupported span of the filter web. In no instance has Eimco's aligning device been mounted laterally adjacent the end of the return roll or any other roll. In most instances on the defendant's three-roll system, defendant's aligning device is located between the filter drum and the discharge roller. In a few instances, the defendant's aligning device has been lo-cated between the return roller and the next preceding roller in its three-roll system. In all instances in defendant's two-roll system, defendant's aligning device has been located between the filter drum and the discharge roller. In all instances in defendant's five-roll system, defendant's aligning device has been located between the filter drum and the discharge roller. Defendant's guide rollers do not contact the filter belt when the belt is in contact with a roll, such as the discharge roll or return roll.

between the return roll and the idler roll. That function is to correct mistracking of the filter belt to track the belt back to the filter drum and center it with respect thereto, and to stretch the belt between opposed pairs of guide rollers.

"In all positions between rolls or the drum and in the path of travel of the belt, the guide rollers perform their function in substantially the same way as guide rollers mounted between the return roll and idler roll. The mode of operation is the same, i. e., to laterally displace the filter belt to one side so that the belt will track by planar motion on to the following roll in the path of travel of the belt. When the guide rollers contact the filter belt while the belt is in contact with the return roll or any roll other than the filter drum, the rollers still act to move the belt laterally by slippage and the belt then tracks by planar motion on the next roll in its path of movement. Since the primary object of the invention and the accused device is the centering of the stretched filter medium on the drum, the court regards the precise location of the guide rollers with reference to the rollers as incidental; and particularly with reference to the centering of the filter medium on the filter drum the devices operate in substantially the same way and perform substantially the same function to accomplish substantially the same result. Moreover, it is found that *any* difference in location of the guide rollers between the patented device and the accused device would be an equivalent variation which would be obvious to one possessing ordinary skill in the art."

The court also found that there was no teaching in the patent disclosure, "that the return roll must be in contact with the belt *at the same time* that the guide rollers exert tension across the belt" for a proper functioning of the patented device.

The law of infringement applicable to this case was stated by this court in King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., supra, as follows:

"Infringement is not avoided by making a machine which differs in form but appropriates the principle and mode of operation of the patented machine by the use of the same or equivalent means. Jamco, Inc. v. Carlson, 274 F.2d 338, supra; Jones v. Bodaness, 10 Cir., 189 F.2d 838; Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442; Johns-Manville Corp. v. National Tank Seal Co., 10 Cir., 49 F.2d 142. Infringement exists if the accused device performs substantially the same function in substantially the same way and accomplishes substantially the same result as the patented device, even though they differ in name, form and shape. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, reh. denied 340 U.S. 845, 71 S.Ct. 12, 95 L.Ed. 620. If the accused machine falls clearly and definitely within the claim of a patent, infringement is made out. McCullough Tool Co. v. Well Surveys, Inc., supra. The protection of the provisions of a patent cannot be avoided by adding materials unless a wholly different result is obtained. 'Colorable differences without substance do not avoid infringement.' Bewal, Inc. v. Minnesota Mining and Mfg. Co., supra, 292 F.2d 159 at 167. Cf. Reiner v. I. Leon Co., 2 Cir., 285 F.2d 501, cert. denied 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388, reh. denied 366 U.S. 978, 81 S.Ct. 1918, 6 L.Ed.2d 1268."

The evidence is without substantial conflict that the place of applying force to the edges of the filter belt and the alignment resulting from the use of the Eimco equipment is the same as that of the patented machine regardless of where it is placed on the structure over which the belt passes. We agree with the trial court that the placing of the equipment between rollers or between the drum and the discharge roller is inconsequential and is merely a substitution of equivalents. The Eimco machine

wherever it is placed on the belt uses the same principle and mode of operation as the one described in the Peterson patent. The two devices do the same work in substantially the same way and produce substantially the same result. This is the test of infringement, as indicated in King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., supra, and the cases cited therein.

Finally, Eimco contends that the "file wrapper" history of the Peterson patent discloses that to obtain his patent, Peterson explicitly limited the mounting of his belt realignment device to a particular point "adjacent to each end of the return roller" and cannot now expand that language to encompass alignment apparatus positioned between rollers such as that used by Eimco. The law is settled that the extent of an invention is to be determined by the patent claims, together with the "file wrapper" history in the Patent Office, and a claim which has been narrowed for the purpose of obtaining the patent cannot be expanded to include that which was eliminated. Graham v. John Deere Co. of Kansas City, Missouri, supra. The application of this doctrine, however, is limited to changes made to overcome rejections by the Patent Office for the reason that the claim was anticipated in prior art similarities. It is not applicable where the patentee encountered difficulties in the Patent Office because of particular wording and indefiniteness of the claims. McCullough Tool Co. v. Well Surveys, Inc., supra; Sears Roebuck & Co., v. Jones, 10 Cir., 308 F.2d 705.

When the Peterson application was filed it contained seventeen claims. The first thirteen were directed to a belt aligning mechanism as illustrated in the Peterson patent. The original claims 1 to 10 specified that the mechanism was to be mounted or positioned adjacent to the filter drum. Original claims 11 and 12 provided for two single "bead contacting rollers" which were "juxtaposed to the ends of the return roller and arranged to move laterally opposite one another to guide and stretch the web in cooperation with the return roller". All of the original claims were rejected by the Patent Office for the reason that they were indefinite and directed to an old combination. Peterson then canceled claim 13 and amended claims 1 to 12. These claims were again rejected for indefiniteness and as unpatentable over the prior art. In response to this rejection, Peterson canceled all of his claims and substituted in their place claims 18 and 19, which are now claims 1 and 2. It is argued that to overcome the rejections of the aforesaid claims, Peterson provided that his roller system for aligning the filter belts would be "mounted adjacent each end of the return roller". It is said that to permit the positioning of the Peterson device in any other location, particularly between rollers, would allow him to recover and include in his patent that which he excluded to obtain it.

An expert witness, after analyzing the Patent Office records, testified that the term "adjacent each end of the return roller" was inserted in the claims for clarifying language and not for the purpose of overcoming a Patent Office objection on the prior art. The witness also said that when Peterson used the term he could have instead appropriately and reasonably said "by means of rollers mounted adjacent to the outer edge of the filter medium."

The trial court found that the critical phrase was included in the patent to overcome a Patent Office rejection because the language of the claims was indefinite and misdescriptive, and not to avoid a rejection on the prior art.[7] The record sustains these findings.

Affirmed.

7. The trial court's findings on the question of "file wrapper" estoppel included the following:

"From the testimony of Burns, plaintiffs' expert, and an examination of the file wrapper of the Peterson patent, I find that the Examiner meant by this rejection that the guide rollers could not be in line with the center of the filter drum because in the draw-

ings and the specification the guide rollers were disclosed as near the outer edges of the drum and that such a position is necessary in order for the guide rollers to contact the beads on the outer edges of the belt. In Paper No. 5 the Examiner said that the rollers were shown "adjacent" the outer edges of the drum. The applicant responded to this rejection by locating the rollers adjacent the ends of the return roll, which, with respect to the filter belt is the same location as the outer edges of the drum.

"In Paper No. 5 the Examiner also rejected claims 1 to 12 as unpatentable over U. S. Patent No. 2,880,875 to Alston in view of British Patent No. 812,-197 or vice versa, and claims 14 to 16 as fully met by the British patent. The phrase "adjacent each end of the return roller" was not placed in claim 18 (claim 1 of the patent) to meet this basis of rejection on the prior art. There is no indication that in this rejection on the prior art the Examiner required claim language that the guide rollers be mounted laterally adjacent the ends of the return roller as contrasted with being mounted longitudinally adjacent the ends of the return roller."