**Russell K. SWANSON, an Individual, and Roblin Industries, Inc., a corporation, Plaintiffs-Appellants,**

**v.**

**UNARCO INDUSTRIES, INC., a corporation, Defendant-Appellee.**

**No. 72-1507.**

United States Court of Appeals, Tenth Circuit.

May 30, 1973.

Rehearing Denied June 20, 1973.

Rehearing Denied Aug. 8, 1973.

---

Robert D. Hovey, Kansas City, Mo. (Donald E. Johnson, Kansas City, Mo., Robert E. Woodhams of Woodhams, Blanchard & Flynn, Kalamazoo, Mich., and William R. Laney and Jerry J. Dunlap, of Dunlap, Laney, Hessie & Dougherty, Oklahoma City, Okl., of counsel, on the brief), for plaintiffs-appellants.

Norman Lettvin, Chicago, Ill. (George H. Gerstman, Chicago, Ill., Francis S. Irvine, of Kerr, David, Irvine, Burbage & Foster, Inc., Oklahoma City, Okl., of counsel, on the brief), for defendant-appellee.

Before HILL and BARRETT, Circuit Judges, and SMITH *, District Judge.

BARRETT, Circuit Judge.

Russell K. Swanson and Roblin Industries, Inc. (Roblin), appeal from an adverse non-jury trial. The Court, 356 F. Supp. 332, held that Swanson's U.S. Letters Patent No. 3,052,319 ('319) was not infringed either directly or contributorily by two grocery carts manufactured and distributed by appellee, Unarco Industries, Inc. (Unarco).

The action was initially brought by Swanson, as owner of the patents, and United Steel and Wire Company (United), as licensee of the patents, against Folding Carrier Corp. Thereafter Roblin succeeded United and Unarco succeeded Folding Carrier after Folding Carrier became a division of Unarco. Although the action was for infringement of U.S. Letters Patents No. 3,052,319, "Cantilever Shopping Cart and Counter Assembly", and No. 3,517,773, "Check-out System and Counter for Use with Cantilever Shopping Cart", the trial court's dismissal of the No. 3,517,773 claim has not been appealed.

A review of the file wrapper will facilitate consideration of this case.

The prosecution of '319 started with Swanson's first patent application on May 4, 1959. It stressed that "the most important object of the present invention [was] to provide a shopping cart that has a basket disposed in overhanging relationship to a primary mobile frame, to the end that the cart cooperates with a counter that is in turn provided with a lateral extension" so that the cart could pass directly over the checkout counter enabling merchandise to be removed directly from the cart onto the counter.

Claims 4, 5 and 6 described the cart as follows:

4. In a shopping cart, a polygonal basket; a polygonal frame; and a standard extending upwardly from the frame adjacent one corner of the latter, said frame being attached to one side of the basket adjacent one corner of the latter.

5. In a shopping cart, a basket; a mobile frame; and a standard extending upwardly from the frame and pro-

---

* Eastern District of Michigan, sitting by designation.

vided with a laterally-extending arm overlying the frame and supporting the basket there beneath.

6. In a shopping cart a polygonal basket; a polygonal frame; a standard extending upwardly from the frame adjacent one corner of the latter, said frame being attached to one side of the basket adjacent one corner of the latter; and an arm extending laterally from the standard from the frame in supporting relationship to the basket therebeneath.

On October 14, 1959, the patent office refused to grant a patent. Claims 1–6 were rejected as failing to distinguish over references Maslow, Goldman, and Genung. Claims 7–11 were rejected as being indefinite and also "as unpatentable over Genung in view of either Alpine or Lesser."[1]

On April 1, 1960, Swanson amended his original application by causing his claims to read as "a single standard extending upwardly from the frame." Swanson stressed this clarification, noting that the construction of his invention required only a single standard to support the basket, and that the construction of each of the five reference patents required two standards.

On December 27, 1960, the patent office refused to grant a patent for a second time. Claims 1–6 were again rejected for failing to distinguish over Maslow, Goldman, and Genung, because "a single standard at one corner or side of the portable frame does not exclude the presence of additional standards at other corners or sides." Claims 1–3 and Claim 5 were rejected for failing to distinguish over Stottrup, and Claims 4 and 6 were rejected as unpatentable over Stottrup in view of Webber. Claims 7–11 were further rejected as unpatentable over Genung in view of Dubach.

On June 8, 1961, Swanson amended his application for a second time by cancelling his first eleven claims and submitting Claims 12–20. Claims 12–17 were rewritten from original Claim 4 and Claims 6–11, and Claims 18–20 were newly submitted so as to provide structure distinguishable from that set forth in Claims 12–17 and to distinguish from the prior art. Claims 12 and 13, as rewritten from original Claims 4 and 6, read as follows:

12. A shopping cart comprising a polygonal basket; a polygonal frame; and a standard extending upwardly from the frame adjacent one corner of the latter, said standard being attached to one side of the basket adjacent one corner of the latter, *the remaining sides of said basket being free of and spaced from said frame and said standard.* (Emphasis ours)

13. A shopping cart comprising a polygonal basket; a polygonal frame; a standard extending upwardly from the frame adjacent one corner of the latter, said standard being attached to one side of the basket adjacent one corner of the latter, *the remaining sides of said basket being free of and spaced from said frame and said standard*; and an arm extending laterally from the standard above the frame in supporting relationship to the basket therebeneath, said basket and said arm being substantially cantilevered from said standard. (Emphasis ours)[2] Claims 12 and 13 became Claims 1 and 2 of '319. Claim 18, which became Claim 7 of '319 reads in part:

A shopping cart for use with a counter having an elongated, laterally projecting extension thereon,—an elongated standard secured to and extending upwardly from one of the sides of said frame; and a basket secured to and extending laterally from said standard in overlying spaced relationship to said frame and forming with the latter and said standard a recess having an open side and opposed open ends—.

1. All of the prior art references noted by the examiner in refusing to allow the issuance of a patent had two standards. .

2. We have emphasized some of the language which appeared for the first time in Swanson's second amendment.

On December 11, 1961 the patent office mailed its notice of allowance to Swanson. United States Letters Patent 3,052,319 ('319) was issued to him on September 4, 1962.

Swanson tried personally for several years to market his cart. In early 1968 he entered into an exclusive license agreement with United whereby United would manufacture and distribute a cantilevered shopping cart. Shortly thereafter, Folding Carrier approached Swanson about his cart. Swanson related that United was the exclusive licensee.

On April 8, 1968, the then top three executives of Folding Carrier made a special, one-day trip to Kansas City, Missouri, to a grocery store in order to view the cantilevered carts being manufactured by United under its exclusive license agreement with Swanson. None of the men had ever seen a cantilevered shopping cart prior to that time. The executives examined the cart for several hours. They took measurements of and made sketches of the cart. Upon returning from their trip to Kansas City, the Folding Carrier executives gave top priority to the construction of a cantilevered cart. By so doing, Folding Carrier was able to have a cart available for demonstrational purposes at a trade show in May, 1968, less than two months after its top management had seen such a cart for the first time in Kansas City. Folding Carrier sold its first cantilevered carts in July of 1968, and it has continuously sold similar carts since.

Swanson and United filed their complaint on October 27, 1970 and a non-jury trial was held on February 1–4, 1972. During the course of the trial Swanson and Roblin called witnesses, including Carl Vaicek, President of United; John Rogers, Vice-President of Rogers Markets, Inc., Harold Vetter, past president of Folding Carrier, and George Foreman, Professor of Mechanical Engineering at the University of Kansas.

Carl Vaicek testified that although the cantilevered cart cost 40–50% more than the conventional shopping cart,

that it has a number of advantages which offset the cost including: (1) the checker has complete control of the checkout; (2) the checker sees all of the food; (3) the food can be checked out quicker; (4) one store test showed that $300 of groceries could be checked out in 15 minutes from a cantilevered cart, whereas it took 50 minutes to check the same food from a conventional cart; (5) the cart serves a dual function as a carryout cart; (6) cart theft had been reduced; and (7) the carts required less maintenance. Vaicek also testified that during 1969–1971 United had sold over 80,000 carts totalling more than three and one-half million dollars in sales.

John Rogers testified that Rogers Markets, Inc. had cantilevered carts in four of its ten stores; that, in his opinion, the additional cost of the cantilevered cart was justified because of the time it saved in the checking out process; that a checkout system utilizing such carts takes up less floor space; that customers do not have to unload their carts; and that Rogers Markets, Inc. will buy more carts, because it is convinced that it is the system to use.

Harold Vetter testified that on April 8, 1968 that he, Gene Von Stein and Norman Young went to Kansas City to look at the cantilevered shopping carts after Von Stein had remarked to him that people in the sales field had been pushing him for something new in the cart field and that "the only thing he could think of was this cart up there in Kansas City."

George W. Foreman, a professor of mechanical engineering at the University of Kansas, testified as an expert for Swanson and Roblin. Foreman testified that the essence of '319 was the overhanging basket in cantilevered fashion so that the basket could overlie a counter; that the essence of the patent was embodied in Claim 1; and that each of the elements of Claims 1–5 and Claim 7, and the relationships between the elements, was embodied within Folding Carrier's carts. On cross-examination Foreman testified that the side plate found on

Folding Carrier's carts is securely attached to and is an extension of the tubular frame; that the tubular frame is attached to the side of the basket through the intermediary of the steel plate; that the claims in a broad concept describe the cantilever concept to leave an open recess or pocket; and that there are many details of construction of the attachment of means of fabrication and detail of design, but that the thrust of the claims is to provide a structure leaving the recess open.

Counsel for Unarco admitted in his opening statement that after United came out with its cart Unarco officials saw it and then decided to manufacture a competitive cart. Unarco's witnesses included Norman Young, Vice President and Director of Manufacturing and Engineering for Folding Carrier Division; Gene Von Stein, Vice President, Director of Marketing and Sales for Folding Carrier Division; and Charles Pigott, a practicing patent attorney.

Young testified that the side plates merely serve to prevent the basket from going forward from rear impact in nesting and to restrain the basket so it will not flip completely over to the rear. He also testified that the third leg on Folding Carrier's cart took the basic load of the basket and that the total stress factors are completely different between the United cart and the Folding Carrier cart.

Von Stein testified that before Folding Carrier began developing its cart that it consulted with counsel and was advised that its proposed cart did not constitute an infringement. He also stated that the last communication Folding Carrier received from United concerning infringement was on January 10, 1969. At that time United acknowledged receipt of correspondence from Folding Carrier's attorney wherein he expressed his opinion that Folding Carrier's carts did not infringe. United stated that in view of said position, it was referring the case for legal disposition.

Charles Pigott, a practicing patent attorney, appeared as a patent expert on behalf of Unarco. Pigott testified to the file wrapper of '319. He opined that the second amendment (File Wrapper pp. 21–29) was the crucial amendment which resulted in the allowance of '319 and that the basket in '319 was supported by two means, i. e., (1) the arm extending laterally from the standard underneath the basket; and (2) the standard attaching to the side of the basket, either one of which could accomplish the same purpose. He testified that Claim 5 as originally filed was most significant because it claimed a means whereby the standard would support the basket by means of an underlying arm without regard to the standard extending upwardly and attaching to the side of the basket; that if Claim 5 had remained there would have been a clear case of infringement; that the original claims were amended the first time to make it crystal clear that the applicant was relying only upon one standard; that the broad concept advanced by Swanson was a cart with a basket that would go over the checkout counter with a frame that would go under said counter; and that after the applicant had driven home this broad concept to the patent examiner, the examiner found three more references and accordingly rejected all of the original claims as amended. Pigott also testified that within the applicant's second amendment, he cancelled his original eleven claims and added nine new ones which were all allowed; that these nine claims became the claims of '319; that the remarks of the applicant in his second application were not broad concept arguments but were detailed structural arguments distinguishing the prior art references; that he had no idea as to whether the claims, if limited to certain structures, would be valid, but that if the claims were construed broadly so as to be directed to a C-shaped idea, (which he would not do), they would not be valid; and that although Folding Carrier's

carts were covered by original Claim 5, they were outside of the claims of '319.

On cross-examination, Pigott said that claims are not automatically limited to the precise structure disclosed; that the Frick reference found by Unarco, but overlooked by the patent examiner, was more relevant than the prior art, although it did have four "members that came up" and that all four corners of the Frick tray were supported; that in looking at the file wrapper one must look at it fairly, and that it must be viewed in its entirety; that the first amendments were for clarification; that when a claim has been cancelled it is not abandoned, and the new claim, so far as it is identical to the old claim is still being asserted; that the applicant had no real problem in avoiding the first five prior art references found by the patent examiner; that the biggest problem was for the applicant to distinguish the references cited later, i. e., Stottrup, Webber, and Dubach; that none of the last three references were exactly the same as '319; and that none of them constituted a wire shopping basket.

In holding that '319 had not been infringed, the trial court, held inter alia that: (1) Swanson obtained patent '319 by amending his application to provide a "standard being attached to one side of the basket adjacent one corner of the latter, the remaining sides of said basket being free of and spaced from . . . said standard"; (2) '319 covers a shopping cart in which the upright standard is attached to one side of the basket; (3) the one side connection of the upright standard to the basket was the sole feature used to distinguish the prior art; and (4) the Folding Carrier carts read on the rejected claims but not on the claims of '319.

Swanson and Roblin contend on appeal that the trial court erred in not applying the correct legal standards in its construction, interpretation, and application of the '319 claims, and that it thereafter erred in finding and concluding that '319 was not infringed. We agree with the appellants.

I.

We must affirm the findings of the trial court unless they are clearly erroneous. Maloney-Crawford Tank Corporation v. Sauder Tank Company, 465 F. 2d 1356 (10th Cir. 1972); Boutell v. Volk, 449 F.2d 673 (10th Cir. 1971).

■ In upholding the validity of '319, the trial court found that it had met the separate tests of patentability, i. e., utility, novelty, and non-obviousness. Eimco Corporation v. Peterson Filters and Engineering Company, 406 F.2d 431 (10th Cir. 1968). However, '319 was not only a valid patent, it was also a pioneer or primary patent, and as such, it must be given a broad and liberal construction which should not be limited to the precise device and instrumentality shown. Black, Sivalls & Bryson, Inc. v. National Tank Company, 445 F.2d 922 (10th Cir. 1971); McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965).

■ The trial court held that Swanson obtained '319 by amending his application to provide a "standard being attached to one side of the basket adjacent to one corner of the latter, the remaining sides of said basket being free of and spaced from . . . said standard." The trial court erred in this determination.

The language "standard being attached to—latter," was neither new nor amendatory. This language was presented in the first application in Claim 4 and it was used throughout the prosecution. While it is true that Swanson did add the language, "the remaining sides of said basket being free of and spaced from . . . said standard", this language was added for purposes of clarification only.

The trial court also held that '319 covers a cart in which the upright standard is attached to the side of the basket and that this side attachment was the sole feature used to distinguish the prior art. We hold that this finding, too, is clearly erroneous.

Although several of '319 claims relate to a shopping cart in which the upright standard is attached to one side of the basket, '319 is not limited to a cart with a basket attached at its side by an upright standard, because Claim 7 does not discuss any such attachment. Each claim within a patent grants the patentee an exclusive right. The fact that a particular claim (or claims) within a patent is invalid, without more, cannot invalidate the entire patent. Maloney-Crawford Tank Corporation v. Sauder Tank Company, *supra*. Whereas the side attachment was used to distinguish Swanson's cart from some of the prior art, this was not the sole feature used to distinguish the prior art. The prior art was distinguished by reason of '319's utilization of a single standard. The prior art was additionally distinguished because it did not provide equivalent structure.

■ The Court also erred in holding that Folding Carrier's carts read on the rejected claims but not on the claims of '319. Original Claim 5 provided for a shopping cart with a "standard extending upwardly from the frame and provided with a laterally-extending arm overlying the frame and supporting the basket therebeneath." Claim 7 of '319 also provides for "an elongated standard secured to and extending upwardly from one of the sides of said frame" with a "basket secured to and extending laterally from said standard in overlying spaced relationship." Unarco's own patent expert testified that all claims must be read fairly, and in their entirety; that a cancelled claim is not abandoned if it is still asserted in the new claim; and that original Claim 5 was the most significant, because had it remained, there would be a clear case of infringement. Applying these standards to original Claim 5 and Claim 7 of '319, we hold that Folding Carrier's carts infringe upon Claim 7.

## II.

■ Unarco argued throughout the trial and to this court that the validity of '319 was predicated on the fact that the side of its basket was attached to an upright standard. This argument is without merit. The record and file wrapper are quite clear in proof that the essence of '319 is that it gave rise to a cantilevered shopping cart of unquestionable utility, and one which was both novel and not obvious. Although the file wrapper does indicate that the standard's attachment to the side of the basket was noted in distinguishing the cart from some of the prior art, this aspect of the prosecution does not vitiate the efficacy of the patent, i e., cantilevered shopping cart, nor does it allow Unarco to copy United's cart with impunity. A mere change in form does not avoid infringement. Maloney-Crawford Tank Corporation v. Sauder Tank Company, *supra*.

The law of infringement was enunciated in King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 354 F.2d 533 (10th Cir. 1965), by Judge Pickett for this court, wherein he opined:

Infringement is not avoided by making a machine which differs in form but appropriates the principle and mode of operation of the patented machine by the use of the same or equivalent means. Jamco, Inc. v. Carlson, [10 Cir., 274 F.2d 338], supra; Jones v. Bodaness, 10 Cir., 189 F.2d 838; Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442; Johns-Manville Corp. v. National Tank Seal Co., 10 Cir., 49 F.2d 142. Infringement exists if the accused device performs substantially the same function in substantially the same way and accomplishes substantially the same result as the patented device, even though they differ in name, form and shape. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, reh. denied 340 U. S. 845, 71 S.Ct. 12, 95 L.Ed. 620. If the accused machine falls clearly and definitely within the claim of a patent, infringement is made out. McCullough Tool Co. v. Well Surveys, Inc., supra. The protection of the

provisions of a patent cannot be avoided by adding materials unless a wholly different result is obtained. "Colorable differences without substance do not avoid infringement." Bewal, Inc. v. Minnesota Mining and Mfg. Co., [10 Cir.], supra 292 F.2d 159 at 167. Cf. Reiner v. I. Leon Co., 2 Cir., 285 F.2d 501, cert. denied 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388, reh. denied 366 U.S. 978, 81 S.Ct. 1918, 6 L.Ed.2d 1268; 354 F.2d at 540.

Applying these standards, we hold that Folding Carrier's carts were doing substantially the same thing in substantially the same way, and that they infringed upon '319.

We reverse the trial court's holding that '319 was not infringed. We remand for further proceedings determinative of Swanson and Roblin's prayer for damages and injunctive relief.