**The Q–PANEL COMPANY, Plaintiff-Appellant,**

v.

**Stephen E. NEWFIELD, Defendant-Appellee.**

**No. 72–1540.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 28, 1973.

Decided July 2, 1973.

Rehearing Denied Aug. 8, 1973.

Arthur L. Cain of Bosworth, Sessions, Herrstrom & Cain, Cleveland, Ohio (Ronald A. Ginsburg, Albuquerque, N. M., on the brief), for plaintiff-appellant.

James E. Snead, of Jones, Gallegos, Snead & Wertheim, Santa Fe, N. M., for defendant-appellee.

Before LEWIS, Chief Judge, DURFEE,* Judge, Court of Claims, and HOLLOWAY, Circuit Judge.

LEWIS, Chief Judge.

This appeal reaches us as a side effect of an action tried in the District Court for the District of New Mexico. In the main case plaintiff succeeded in obtaining a judgment declaring United States Patent No. 3,500,682 issued to defendant Newfield to be invalid for obviousness and further dismissing Newfield's counterclaim for alleged infringement. The single dispositive appellate question is whether the trial court erred in refusing to allow plaintiff to recover attorney fees under the authority of 35 U.S.C. § 285. The cited statute provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The trial court's findings and conclusions contain nothing relating to any alleged fraud on the part of Newfield in obtaining the patent and plaintiff's proposed findings, which would supply a premise for the allowance of attorney fees, were refused by the trial court.

■ The allowance of attorney fees in a case such as this is not only left to the primary discretion of the trial court but that court's discretion is severely limited in the first instance to allowance only in "exceptional cases." Thus plaintiff has the double burden in this court of clearly establishing the existence of an exceptional case and the abuse of discretion by the trial court in not awarding attorney fees. This dual burden is a heavy one, for the awarding of attorney fees in patent cases must be the exception and not the rule.

■■ A finding that a patent is invalid because obvious to one of ordinary skill in the art is not a sufficient premise to trigger an award of attorney fees. The statute contemplates such misconduct upon the part of the losing party as to constitute fraud on the Patent Office or so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel. See Purer & Co. v. Aktiebolaget Addo, 9 Cir., 410 F.2d 871, cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84. Even less than candid conduct will not dictate

* Sitting by designation.

the award. Indiana General Corp. v. Krystinel Corp., 2 Cir., 421 F.2d 1023, cert. denied, 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91.

■ From our review of the record we would term the circumstances leading to the granting of the subject patent to defendant as unusual and containing overtones of loose procedure (particularly in regard to disclosures of the prior art) but not such as would require the trial court to find that plaintiff was abused in an extraordinary case through defendant's conduct and as a matter of law.

Newfield was employed by the United States Navy at the Mare Island Shipyard Paint Laboratory in San Francisco from June 22, 1964 to April 7, 1967. During this period Newfield was engaged in the testing of paint and other surface coatings. He thus became knowledgeable on the operation and construction of three prominent accelerated weathering testers, the Atlas Twin Arc Weather-Ometer, the Salt Fog Cabinet, and the Cleveland Condensing Humidity Cabinet. All three of these devices are designed to simulate weathering factors and accelerate the consequent effects upon various surface coatings.

During the course of his employment at Mare Island, Newfield concluded that the Atlas Weather-Ometer, the Salt Fog Cabinet and the Cleveland Humidity Cabinet did not individually produce results which correlated with natural weathering effects. Newfield did obtain better results by utilizing the three machines in various sequential combinations. The rotation process, however, was slow and cumbersome. Additionally, it was not able to duplicate the extreme corrosive effect of simultaneous exposure to ultraviolet light and condensation which Newfield had observed in the weather conditions of the San Francisco Bay area. Consequently, Newfield constructed a prototype of the machine covered by the patent in issue. His purpose in this endeavor was to design a single device which would expose coated test panels to both ultraviolet light and condensation and accomplish exposure to these two forces alternatively either in separate cycles or simultaneously.

Newfield claimed that the ability of the prototype and the patented apparatus to simultaneously combine exposure to condensation and ultraviolet light was unique. The record does not refute this.[1] The subsequent judicial determination that the subject matter of each patent claim was obvious to a person of ordinary skill in the art lends little support to any contention of fraud in the basic representation of inventiveness.

Newfield was represented by and relied on Navy patent attorneys throughout the patent application process. Although Newfield on his own initiative submitted a patent rights questionnaire and an invention disclosure form to the Navy while he was employed at Mare Island, it was a Navy patent attorney who

[1]. Neither the Salt Fog Cabinet nor the Cleveland Humidity Cabinet exposes coated test panels to ultraviolet light. Another prominent weathering tester, the Golden Gate Cabinet, applies only ultraviolet light. The Atlas Weather-Ometer accomplishes exposure to ultraviolet light and condensation in separate cycles. The evidence was inconclusive regarding the ability of this machine to simultaneously expose test panels to these two forces. The documentary evidence neither established nor ruled out the possibility of concurrent exposure in the Atlas Weather-Ometer. Certain testimony, however, tended to negate the possibility of simultaneous exposure because the relative humidity would always be too low to cause condensation during the period of exposure to light. Additionally, the testimony differentiated the process of condensation from the mere application of water and further emphasized the corrosive effect of condensation. Moreover, even though the district court found that a publication printed prior to Newfield's invention discussed simultaneous application of water and ultraviolet light and that the Atlas Weather-Ometer simultaneously exposed test panels to humidity and ultraviolet light, the court made no finding with respect to the prior art's simultaneous application of condensation and ultraviolet light.

broached the subject of a patent application. The attorney, Paul Critchlow, encountered some difficulty in locating Newfield because the latter had terminated his employment with the Navy and changed his address. When he was finally able to contact Newfield, Critchlow stated that he wanted to file a patent application. The entire patent application procedure was handled by Navy patent attorneys and all communications between these attorneys and Newfield were in the form of written correspondence. Newfield's patent granted the United States a royalty-free license to manufacture and use the patented device.

Certainly these facts are not illustrative of the typical attorney-client relationship in which an attorney is both a faithful advocate whose loyalty to his client is undiluted by the interests of others and an objective counselor whose advice warns of any legal pitfalls which might beset the client. During the patent application process, Newfield was represented by attorneys whose loyalty to him was diluted because of their positions as government attorneys. Even though both Newfield and the government had a mutual interest in the issuance of a patent, the government was not faced with the same risks as a patent applicant. As a consequence, Newfield did not have the benefit of interviews and personal contact with counsel whose sole concern was analysis of the facts from the viewpoint of a patent applicant and whose advice could have averted the legal problems raised in this litigation. Although Newfield cannot avoid all responsibility for the acts of the Navy attorneys, this atypical attorney-client relationship illuminates facts which otherwise might indicate deceptive conduct and is relevant in determining whether the instant case is an exceptional one under 35 U.S.C. § 285.

The trial court indicated that deficiencies in the patent application were attributable to the Navy and its lawyers and that defendant did not knowingly participate in any conduct intended to deceive the Patent Office.

The court further stated that "under the circumstances indicated by the record" defendant should not be considered knowledgeable of the intricacies of patent law, nor imputed to be so, and had obtained the patent "by means which appeared proper and correct under the circumstances." Although these expressed views by the trial court were not entered as formal findings, they suffice to show a basis for the court's refusal to allow recovery of attorney fees.

All other contentions made by either plaintiff or defendant have been considered and determined to be without dispositive merit. The judgment is affirmed.