IRON ORE COMPANY OF CANADA, a corporation, and Ireco Chemicals, a corporation, Plaintiffs-Appellants,

v.

The DOW CHEMICAL COMPANY, a corporation, Defendant-Appellee,

and

University of Utah, a body politic and corporate under Utah law, Intervenor-Appellee.

IRON ORE COMPANY OF CANADA, a corporation, Plaintiff-Appellant,

v.

UNIVERSITY OF UTAH, a body politic and corporate under Utah law, Defendant-Appellee,

v.

Henry E. FARNAM, Jr., Defendant-Appellant by Joinder.

Nos. 73–1490 and 73–1491.

United States Court of Appeals, Tenth Circuit.

Argued March 22, 1974.

Decided July 18, 1974.

William A. Marshall, Chicago, Ill. (Charles J. Merriam, Alvin D. Shulman, Merriam, Marshall, Shapiro & Klose, Chicago, Ill., Donald C. McKinlay, Holme, Roberts & Owen, Denver, Colo., on the brief), for plaintiff-appellant Ireco Chemicals.

Richard R. Trexler, Chicago, Ill. (Richard Bushnell, Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., Chicago, Ill., and Hugh C. Garner, Salt Lake City, Utah, of counsel, on the brief), for defendant-appellee The Dow Chemical Co.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a patent case involving an explosive in slurry form, i. e., an explosive in a mixture form wherein the solid material is suspended in a liquid. The particular slurry type explosive here involved is composed of ammonium nitrate plus aluminum plus water $(AN+A1+H_2O)$ and is used in blasting operations in general, and in the mining industry in particular. In connection with its use in mining operations, a slurry explosive may be poured into a borehole and, being in a liquid form, it tends to fill the borehole fully. Such gives the slurry explosive an advantage over the traditional solid and packaged explosive, which tends to get snagged and thus fails to get to the bottom of a given borehole, the interior walls of a typical borehold being jagged and uneven.

As we understand it, the only real parties to this appeal at the present time are Ireco Chemicals, a Utah corporation, and Dow Cehmical, a Delaware corporation. The University of Utah, a body politic and corporate under Utah law, was a party to the proceedings in the trial court and was designated as a party on appeal. However, the University did not file a brief nor has it otherwise participated in this appeal and we are advised that the University and Ireco, and the latter's assignor, the Iron Ore Company of Canada, a Delaware corporation with its principal offices in Canada, have now settled their differences to the end that the present appeal boils down to a patent dispute between Ireco and Dow.

The present controversy arises from the fact that both Ireco and Dow hold patents for an explosive slurry composed of ammonium nitrate plus aluminum plus water. Ireco's United States Patent No. 25,695 (hereinafter referred to as the '695 patent), being a reissue of United States Patent No. 3,121,036 (hereinafter referred to as the '036 patent), is based on work done by Dr. Melvin A. Cook and one Henry E. Farnam. Dr. Cook was formerly employed in the research department of DuPont and more recently was employed by the University of Utah where he taught classes and directed an explosive research group. Farnam is a vice-president of the Iron Ore Company of Canada. The particular work of Cook and Farnam relied on by Ireco for its priority date was performed in 1957 and 1958. Dow's Patent Application, Serial No. 784,881 (hereinafter referred to as patent application '881) was based on work performed by two of its employees, Joseph R. Hradel and Harold E. Staadt, in the early 1950's and ending in 1955 and 1956. A bit of background concerning the patents here involved may be helpful.

Dr. Cook while teaching at the University of Utah performed certain experimental work under contract with the United States Navy beginning in the early 1950's, which work involved many different explosive compositions, one of which was a composition of $AN+A1+H_2O$. This contract work was discontinued in about 1954. Sometime in the fall of 1956, Dr. Cook met Farnam, who was at that time operations manager for the Iron Ore Company of Canada. Discussion ensued concerning

an explosive slurry which could be used in the mining industry and more particularly for use in boreholes in the blasting of ore bodies. Dr. Cook, with suggestions from Farnam, performed experimental work along the lines thus indicated in 1957 and 1958. As a result of Cook's and Farnam's work, the Iron Ore Company of Canada, Ireco's predecessor in interest, made application for a patent in October 1958. This application resulted in the issuance of patent '036, which, as indicated, is the predecessor to patent '695 upon which Ireco now relies.

Patent '036 contained five claims, as we understand it, and sometime in 1964 Ireco complained by letter to Dow that the latter was infringing on its patent, and more particularly on claim 5 thereof. Dow in turn informed Ireco that its (Dow's) explosive did not infringe on claim 5 because Dow's explosive did not incorporate the particle sizes or the densities specified in claim 5 of patent '036. Ireco apparently acquiesced in Dow's explanation. At least no formal proceeding of any type was instituted against Dow at that time. Instead, Ireco through Cook and Farnam sought a reissuance of its patent '036. In their application for reissuance Cook and Farnam claimed that through lack of communication between themselves and patent counsel, they had sought less in the original application than they had a right to claim. The patent thus reissued, here known as the '695 patent, in addition to the claims 1–5 in the original patent, includes additional claims referred to as claims 6 through 12.

In the early 1950's Dow had itself become interested in developing explosive compositions for a variety of earth moving and mining uses in addition to oil well uses. Dow's employees Hradel and Staadt tested many compositions including $AN+Al+H_2O$ during an experimental program which began in 1955 and was completed in October 1956. This testing program resulted in the discovery of a number of different explosive compositions which were subsequently covered by several patent applications.

One of these is patent application '881 which later became involved in the interference proceedings in the Patent Office.

After the reissuance of the '695 patent to Ireco in 1964, Dow caused the United States Patent Office to institute an interference proceeding to determine whether the invention disclosed in the '695 patent, and more particularly whether that disclosed by claim 9 thereof, was first developed by the aforesaid Cook and Farnam, or by the two Dow employees Hradel and Staadt. After hearing, the Board of Patent Interferences awarded priority of invention to Dow on the basis that there was a reduction to practice of the count of interference by Dow through the work of Hradel and Staadt by the fall of 1956, such antedating the work of Cook and Farnam. It was in this general setting that Ireco went to court.

Ireco's complaint, containing two counts, named Dow as the sole defendant. The first count was an action brought pursuant to 35 U.S.C. § 146, which is basically a de novo action in effect appealing the decision by the Board of Patent Interferences, which, as indicated, held that Dow's Hradel and Staadt were the prior inventors of certain explosive compositions claimed by Ireco in patent '695. The second count in Ireco's complaint charged Dow with infringement of claims 5 through 12 of patent '695.

As indicated above, the University of Utah intervened in the proceeding brought by Ireco against Dow. The basis for such intervention was the University's belief that the work done by Cook should have inured to the benefit of the University, and not Ireco, hence it made claim to the ownership of patent '695. Also as indicated above, it is our understanding that the University and Ireco have resolved their differences and that the only disputants in this appeal at this time are Ireco and Dow.

Trial of this matter to the court extended some two weeks and culminated

in a judgment in favor of Dow. Specifically, in elaborate findings and conclusions, the trial court concluded that Hradel and Staadt were the first inventors of the subject matter of the patents here under consideration and affirmed the interference decision of the Patent Office awarding priority to Dow. In line with its resolution of count one of Ireco's complaint, the trial court also found for Dow on the infringement issue raised in count two of the complaint. Ireco now appeals.

The findings, conclusions and judgments of the trial court are reported in 177 U.S.P.Q. at pages 34 to 76. The length of the trial of this case, over two weeks, and the detailed findings and conclusions of the trial court, some forty-two pages in printed form in the United States Patent Quarterly, are eloquent proof that the trial judge gave this entire matter his most careful attention. Accordingly, there is no need to here recite the factual background out of which this controversy arises, as such is set forth fully in the findings of the trial court. We shall here confine ourselves to the one or two matters which we believe to be decisive of the appeal and which require an affirmance of the judgment entered by the trial court.

In our view, perhaps the crucial issue in this appeal concerns just what Ireco invented through the efforts of Cook and Farnam, and whether such was the same as, or different from, that which Dow invented through the efforts of Hradel and Staadt. In other words, is the subject matter of patent '695 the same as that of Dow's patent application? If both were simply the invention of a detonable explosive in slurry form consisting of ammonium nitrate, aluminum, and water, then Dow has the earlier priority date.

It is Ireco's position on appeal that the subject matter of its patent '695 is different than Dow's and that '695 is not just *any* detonable explosive in slurry form consisting of ammonium nitrate, aluminum, and water, but that it is a *particular* slurry which has been made "water compatible" through what Ireco calls "complete water soaking." Ireco asserts that the patent claims and specifications clearly indicate that its invention is narrower than, and different from, Dow's invention because of this "completely water soaked" concept. Reference will now be made to the definition which Ireco seeks to give the phrase "completely water soaked."

As indicated, according to Ireco its patent '695 is not just any slurry of $AN+A1+H_2O$, having solid particles of AN and A1 in $H_2O$, but that it is a slurry containing just the right amount of $H_2O$, i. e., no more and no less than is required to render the slurry water compatible because of the fact that it is "completely water soaked." Illustrations may help to point up what Ireco deems to be a completely water soaked explosive slurry.

In a completely water soaked $AN+A1+H_2O$ slurry, the solid particles are "blanketed," i. e., completely water soaked, in the sense that there is *just enough* liquid to fill all the voids or spaces between the solid particles, no more and no less. If the amount of water used were *less* than that required to completely water soak the solid particles, then the upper portion of the mix would be relatively dry, composed of solid AN and A1 particles with no liquid in the spaces between the particles. On the other hand, if one were to employ *more* water than required to completely water soak the solid particles, then there would be an upper layer or supernatant liquid of solution devoid of solid particles. The first of these examples is the only one which is "completely water soaked," according to Ireco, and the latter two examples are not, even though water is used in the slurry.

It is on this basis that Ireco contends that theirs is not just *any* slurry consisting of $AN+A1+H_2O$, but a slurry which is "completely water soaked," thus rendering it water compatible to the end that it is suitable for use in boreholes

where water is present. A word about "water compatibility" is in order.

A typical borehole in a mining operation is ofttimes filled with water, and of course such water has an adverse affect on the solid type explosive. Because of this fact, Farnam, the vice-president in charge of the mining operations of the Iron Ore Company of Canada, encouraged Dr. Cook to invent a slurry type explosive which would be compatible with any water to be found in a borehole. According to Ireco, "this was the first time anyone had ever thought of using water to protect an explosive against water." Furthermore, according to Ireco, it is only when a slurry explosive composed of $AN+A1+H_2O$ is- "completely water soaked" that the explosive is "water compatible" and suitable for use in a wet borehole. It is on this general basis that Ireco claims that the subject matter of its invention is different from that of Dow's, the latter being a slurry but not one which is necessarily "completely water soaked" and therefor Dow's slurry is not "water compatible."

■ It is Dow's basic position that both inventions relate to the same subject matter, namely, a slurry explosive consisting of $AN+A1+H_2O$ and that Ireco's claim that its invention is a special kind of slurry which is "completely water soaked" and therefor "water compatible" is but a play on words, representing only an afterthought on its part, and not the true subject matter of its patent '695. As indicated, the trial court rejected the position advanced by Ireco and found that Ireco's and Dow's inventions concern the same subject matter. In this regard, we conclude from our study of the matter that the trial court's findings are not clearly erroneous and accordingly on appeal should be upheld. Hinde v. Hot Sulphur Springs, Colorado, 482 F.2d 829 (10th Cir. 1973); Swanson v. Unarco Industries, Inc., 479 F.2d 664 (10th Cir. 1973), cert. denied, 414 U.S. 1076, 94 S.

Ct. 593, 38 L.Ed.2d 483 (1973); Maloney-Crawford Tank Corp. v. Sauder Tank Co., 465 F.2d 1356 (10th Cir. 1972).

On this phase of the appeal Ireco first argues that as a matter of fact the trial court actually found that Ireco's invention was not merely an $AN+A1+H_2O$ slurry, but was a slurry which was "completely water soaked." Ireco then complains that the trial court thereafter failed to apply its finding on this particular matter to the issues in the case. This would perhaps be a valid argument *if* the trial court and Ireco used the same definition for the phrase "completely water soaked." However, from the further findings of the trial court it is quite evident that they did not.

For example, in finding 36 it is quite true that the trial court found that patent '695 as a whole, and particularly as to claim 9 therein, is a combination of $AN+A1+H_2O$ in the form of a slurry of solid AN and A1 particles in a solution of AN which "completely soaks" the solid particles. However, the trial court then went on in that same finding to expressly negate that which Ireco now claims are the essentials of a "completely water soaked" solution when the trial court further found as follows:

> " * * * The court further finds that the patent does not disclose or teach as an essential or critical part of the invention, or at all, that all the spaces between the solid particles must be filled with the AN solution, that there can be no supernatant liquid or that the slurry necessarily is homogeneous and stable even when not undergoing mixing."

Accordingly, it is obvious to us that the trial court when it used the phrase in its findings that the solution "completely soaks" the solids was not thereby adopting Ireco's definition of "completely water soaked." In fact, the trial court rejected Ireco's definition of that phrase as being the subject matter of its invention. Let us now examine patent

'695 in the light of its claim and specifications.[1]

Ireco's patent '695 is entitled "Explosive Composition Comprising Ammonium Nitrate and Heat Producing Metal." The phrase "completely water soaked" is not used in any of the twelve claims included in the '695 patent. The phrase is, however, used once in the description of the invention in the patent specifications, although the phrase itself is not defined therein as it is now sought to be defined by Ireco in this court. We deem the testimony of those skilled in the art as to the meaning of the phrase to be inconclusive. On such state of the record the trial court understandably observed that a "question * * * naturally arises * * * why what is now contended as the very heart of the invention and its distinguishment from prior art was left unsaid or to depend on indirect, equivocal or arguable language." We too share the same concern. It is strange that the phrase "completely water soaked" is not used in any of the twelve claims in patent '695 and is but briefly mentioned in the specifications, and yet Ireco now claims that water compatibility through complete water soaking is the essence of the invention. Certainly it is a permissible inference that this concept of a "completely water soaked" slurry represents an afterthought on the part of Ireco advanced here in an effort to bolster its case against Dow, and was not at the time of the patent application really deemed to be an essential of the subject matter.

Without going into a detailed analysis of the record, which includes not only the written record as reflected by the several patents, including claims and specifications, but also includes extended testimony from all of the participants, our study convinces us that there is ample evidence to support the trial court's determination that the subject matter of Ireco's and Dow's respective patents is the same, and that Dow is the first inventor. By no stretch of the imagination can the trial court's findings be characterized as "clearly erroneous," which we would have to do if we were to reverse. In sum, then, the record supports the trial court's determination that Dow was the prior inventor.

■ In our view the trial court's finding that Dow was the prior inventor of the subject matter of Ireco's patent '695 applies not only to claim 9 in patent '695, which was the only claim involved in the interference proceeding, but also applies to all claims in the patent, including claims 5 through 12, which are the basis for the infringement count. In one sense we need only be concerned here with claims 5 and 9 of '695, which are representative of the others. As indicated, both the patent office and the trial court have concluded that as concerns claim 9, the subject matter of that claim was the same as that of Dow's patent application based on earlier work. And we agree that for the same reason an infringement action based on claim 5 will not lie.

■ It is true that claim 5 in '695 did contain certain limitations as to the density of the slurry and the percentage of water to be contained therein. In this regard Ireco argues that even though the phrase "completely water soaked" is not used in claim 5, still if the limitations concerning the percentage of water is set forth in the claim be followed, the result will be a slurry which is, in fact, completely water soaked. In this connection, however, Dow presented evidence which tended to show that a slurry made within the limitations set forth in claim 5 did not necessarily result in a slurry that was completely water soaked, even under Ireco's narrow definition of that phrase. In

---

1. "While the claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly, * * * it is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention. * * *." United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

turn, Ireco attempted to counter such evidence by showing that a slurry prepared in accord with the limitations set forth in claim 5 would be a completely water soaked slurry *if* the right combination of large and small particles were used. On this state of the record, with much of the evidence in conflict, it is not surprising to us that the trial court concluded that the subject matter of claim 5 was the same as that defined in the count of interference, and that claim 5 was not expressly or by implication limited to a completely water soaked slurry mixture under Ireco's definition of that phrase. In sum, then, the record supports the trial court's determination that none of the claims in patent '695 describe a slurry of the type here argued for by Ireco and that the subject matter of '695 was the same as Dow's prior work. We agree with the trial court's holding that claim 5 of the '695 patent is obvious in view of, and unpatentable over, the work of Hradel and Staadt in 1955 and 1956, and the Hradel and Staadt invention as defined in the interference count.

■ Ireco alternatively argues that Dow was itself guilty of inequitable conduct in connection with the preparation of its patent application to the end that such misconduct forecloses Dow from asserting its claim to any patent rights, including priority in an interference proceeding. In connection with this particular phase of the controversy the trial court found no such misconduct as would preclude Dow from asserting its rights under its several patents relative to a slurry type explosive compound of $AN+Al+H_2O$. Certainly the evidence pertaining to inequitable conduct on the part of Dow was conflicting and, accordingly, on appeal the trial court's resolution of the matter should not be disturbed by us.

■ Dow by cross-appeal seeks reversal of that portion of the trial court's judgment which refused to award attorney fees to Dow. Section 285, 35 U.S.C., does provide that in "exceptional cases"

an award of reasonable attorney fees *may* be made to the prevailing party in a patent proceeding of this type. So, even if the instant case can in some way be described as "exceptional," the trial court still cannot be reversed unless its refusal to award attorney's fees constituted an abuse of its discretion. Hayes Spray Gun Company v. E. C. Brown Company, 291 F.2d 319 (9th Cir. 1961). We find no such abuse of discretion. In this general connection, *see also* Q-Panel Company v. Newfield, 482 F.2d 210 (10th Cir. 1973).

Judgment affirmed.