Lewis J. McDERMOTT, III, Plaintiff,

v.

OMID INTERNATIONAL, et al., Defendants.

Lewis J. McDERMOTT, Plaintiff,

v.

**STABITEX VERTRIEBSGESELLSCHAFT MbH, Defendant.**

Nos. C-2-84-1688, C-2-86-119.

United States District Court, S.D. Ohio, E.D.

June 16, 1988.

Frank T. Kremblas, Columbus, Ohio, for plaintiff.

Thomas L. Long, Baker & Hostetler, and William W. Milligan, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for defendants.

GRAHAM, District Judge.

## FINDINGS OF FACT

1. Ward Patent No. 4,234,649 has been held valid and infringed by defendants Omid International, Inc., Oriental Rug Supply House and Stabitex Vertriebsgesellschaft MbH (hereinafter "Omid," "ORSH" and "Stabitex MbH,") by a product known as "Stabitex" manufactured in West Germany by Stabitex MbH and distributed in the United States by defendants Omid and ORSH.

2. Stabitex MbH is a West German corporation and Helmut Dix is its founder, director and chief executive officer. Omid is an Ohio corporation. Said Karkouti is its founder, president and chief executive officer. ORSH is a subsidiary of Omid. At times, Omid and ORSH do business in each other's name.

3. The invention disclosed in the Ward patent is a fabric scrim coated with a stripable adhesive intended to be used to hold a carpet to a floor surface. Pursuant to the patent, plaintiff produces a product known as Loklift. Stabitex is essentially an identical product.

4. Plaintiff Lewis J. McDermott acquired the Ward patent in August, 1982 and started production of the Loklift product in early 1983. There are two principal uses for the product: 1) the installation of broadloom wall-to-wall carpeting, and 2) securing area rugs and oriental rugs to a carpeted or non-carpeted floor surface. Plaintiff refers to the latter use as the "anti-slip" application. These two uses constitute two separate markets. The infringer Omid sold the product only for use in connection with oriental rugs. Plaintiff sells Loklift to wholesale distributors and retailers. The infringer, Omid, is a wholesaler who sold the product to retailers.

5. The anti-slip version of Loklift was first presented at a trade show in Atlanta in January, 1984. It is packaged in a six inch by twenty-five foot roll containing 1.389 square yards.

6. The infringer, Omid, marketed Stabitex in packaged units of eighteen inches by thirty-six inches and in rolls of thirty-five inches by 165 feet. Omid sold Stabitex at prices from $3.24 per square yard (10 to 19 rolls) to $4.20 per square yard (1 carton of 100 packages).

7. Plaintiff testified that when he entered the anti-slip market, he intended to price his product at $6.479 per square yard to distributors and $12.958 per square yard to retailers, but that he immediately withdrew his pricing upon learning that Omid was present at the same show offering Stabitex, at a price of $4.20 per square yard. Thereafter, plaintiff decided to enter the market at a price of $4.17 per square yard to retailers and $3.448 per square yard to distributors. Plaintiff was later able to raise his prices to $4.67 for retailers (except Sears) and to $4.16 for distributors.

8. In 1981, plaintiff's predecessor, Commercial Carpet Corporation, began selling Loklift to Golden Star, Inc., a wholesaler of commercial and industrial carpets, entrance mats and carpet runners. Golden Star resold the product at a price of $6.479 per square yard indicating to its customers that this was a fifty (50%) percent discount from a suggested re-sale price of $12.958 per square yard. Plaintiff testified that

Golden Star's price structure was the basis for his intention to sell Loklift in the anti-slip market at the same price level. Golden Star sold 2,000 to 3,000 units of the product in 1981, 15,000 units in 1982 and the same amount in 1983. Golden Star sold to a small number of customers at a discount of fifty (50%), plus twenty (20%) percent. Golden Star's current volume of sales is approximately 5,000 units per year. Its vice president attributed the decline in sales to price competition by the plaintiff and Sears. There was no evidence that any of Golden Star's customers ever resold the product at the suggested re-sale price and the evidence does not support plaintiff's expectation of a selling price to retailers of $12.958 per yard.

9. Golden Star sells to the commercial and industrial market. While Golden Star was able to sell the product to its customers at a price of $6.479 per square yard, it is unlikely that such a price could have been maintained in the residential area rug and Oriental rug market because of the presence of lower priced competing products available for that application. Thus, it is unlikely that plaintiff could have successfully marketed Loklift at a distributor price of $6.479 per square yard, as it originally planned.

10. The Court is not convinced by a preponderance of the evidence that Omid's pricing of Stabitex significantly reduced the price at which plaintiff was able to sell its product. The Court concludes that plaintiff would ultimately have settled upon prices in the same general range that it has been selling the product for since 1984.

11. The infringer, Omid, is engaged exclusively in the handmade oriental rug business, a limited market consisting of 1,500 dealers in the United States. Plaintiff was not actively involved in selling to this market and had no extensive contacts in this market, as did Omid. Plaintiff did not advertise in this market. It is unlikely that plaintiff would have made any significant amount of sales in this market during the period of infringement. However, if Stabitex had not been available to Omid, Omid would undoubtedly have purchased Loklift from the plaintiff and all of the Stabitex MbH sales to Omid are sales which otherwise would have been made by the plaintiff. Plaintiff would have made these sales to Omid but for the infringement.

12. Plaintiff's lost profit, as a result of the infringement, is the difference between plaintiff's cost of producing the product and the likely price at which he would have sold the product to Omid. The price that Omid would have been willing to pay was limited by Omid's ability to re-sell in its market at a reasonable profit. While Stabitex and Loklift have unique desirable qualities, they are not the only products which perform the function of holding an area rug or an oriental rug to a surface. There are products made of felt, rubber and velcro-like material which perform the same function and which are well known in the oriental rug market. When Omid entered this market with Stabitex, it was able to achieve only a ten (10%) percent penetration. Most of the competing products sell at prices in the range of $3.00 to $4.00 per square yard. The market leader, No Muv, sells in the $5.00 per square yard range. Omid sold Stabitex at $4.20 per square yard and it is unlikely that it would have succeeded in selling the product in this market at a significantly higher price. In order to make a reasonable profit, it is not likely that Omid, or anyone in its position, would have paid more than $3.50 per square yard to purchase the product. Based on all of the evidence, the Court concludes that Omid and the plaintiff would most likely have agreed on a price in the range of $3.50 per square yard which is in the same range that plaintiff sold Loklift to a wholesaler, Blacknall. Plaintiff sold to Blacknall at $3.45 per square yard during 1984, 1985 and 1986. Sometime in 1986, the price to Blacknall was raised to $4.168 which is the same price at which plaintiff began selling to Sears. It is likely that plaintiff and Omid would have agreed to a similar price increase at that time. The Court will assume that this price increase would have applied to one-half of the 1986 sales.

13. Although plaintiff claimed that the price at which it sold Loklift to Blacknall was limited due to the infringer's competition, plaintiff did not introduce any evidence to this effect. Plaintiff made similar claims with respect to its selling price to Sears and other customers but other than plaintiff's own conclusory statements, there was no evidence supporting those claims and the Court finds that the plaintiff has failed to sustain its burden of proof with respect to his claims that his selling prices and profits were reduced because of the infringer's competition. The same is true of his claims of inability to raise prices because of the infringer's competition.

14. Plaintiff's cost of producing and selling Loklift in 1986 was $1.258 per square yard which is representative of the plaintiff's marginal cost during the period of the infringement. At a selling price of $3.50 per square yard, plaintiff's profit would have been $2.242 per square yard and at a selling price of $4.168 per square yard, plaintiff's profit would have been $2.91 per square yard. Omid purchased 115,164 square yards of Stabitex from 1983 through 1985. One-half of Omid's 1986 purchases would be 34,923.5 square yards. The total lost profit on these sales at a probable selling price of 3.50 per square yards is $336,496.17. Omid's 1987 purchases of Stabitex added to the remaining half of its 1986 purchases total 69,847.5 square yards. At a probable selling price of $4.168 per square yard, plaintiff's lost profit on these sales was $203,256.22. Plaintiff's total lost profit on Omid's purchases of Stabitex was $539,752.39. But for the infringement, plaintiff would have made the sales Stabitex MbH made to Omid. Plaintiff had the capacity to produce the product for those sales. There was a demand for the product and there was no other product which had all of the same desirable qualities as Loklift.

■ 15. Loklift is sold in Europe by plaintiff's distributor, Roberts, and in the United Kingdom by plaintiff's distributor, Gradus, Ltd. Roberts pays a royalty of ten (10%) percent in European countries where the patent has been issued and five (5%) percent where the patent has not been issued. Gradus pays a royalty which varies from six (6%) percent to sixteen (16%) percent depending upon the product involved. However, the plaintiff owns the company, Somic, which manufacturers the product and supplies it to both Gradus, Ltd. and Roberts. Somic pays a one-third royalty to Loklift. The Court concludes that neither the Roberts nor the Gradus, Ltd. royalty arrangements can be considered evidence of a reasonable royalty for a license to manufacture or sell Loklift in the United States.

16. Plaintiff is not in the business of selling licenses; he has the ability to manufacture and sell a substantial additional volume of his product. He could have readily produced an amount of material equal to the Stabitex sales. Plaintiff would have had no motivation to enter into a licensing or royalty agreement with either of the defendants. If plaintiff had entered into such an agreement, he would have charged a royalty nearly equivalent to the amount of profit he could have realized by selling the product to a distributor or wholesaler. Such a royalty would have been in the range of $2.00 to $2.25 per square yard during the years 1983 through 1985 and $2.75 to $3.00 per square yard in 1986 and 1987.

■ 17. Plaintiff is entitled to prejudgment interest on his lost profits. The interest rate actually paid by plaintiff to his factor during the years of infringement ranged between 9.33 percent and 13.58 percent. Such borrowing anticipates a turnover of accounts receivables which will discharge the debt within a period of sixty (60) to ninety (90) days. It would not be appropriate to calculate prejudgment interest using the short term rates charged by the factor in a given year, such as 1983, and applying that rate on a compound basis to every year thereafter. The Court concludes that a fair rate for prejudgment interest is a rate of ten (10%) percent compounded annually. While not necessarily controlling in this situation, this is the rate specified by Ohio law where there is a liquidated obligation but no specified inter-

est rate. See Ohio Revised Code § 1343.03(A).

18. Helmut Dix of Stabitex MbH has been in the carpet and rug business in Germany to some extent since approximately 1970. Plaintiff's European distributor, Roberts, called on Mr. Dix beginning in approximately 1975. Roberts began selling Loklift in Germany in 1978 and promoted the product at the Heimtextile Trade Fair in Frankfurt, West Germany in 1978 and 1979. While Dix testified that Roberts' sales efforts directed toward him were limited to tools, this testimony is not credible in view of his employer's involvement in the carpet and rug industry. Roberts' promotion of Loklift and the fact that Roberts had a Loklift display at the industry's largest European trade fair in 1978 and 1979 which was held in Frankfurt, West Germany leads the Court to find that Dix became aware of Loklift through Roberts and copied the product using his knowledge of the carpet industry and his own expertise in adhesives.

19. Ward filed a German patent application which was laid open to public inspection on December 15, 1977. That application revealed that the Ward patent had issued in the United States on November 18, 1980. On March 4, 1983, Stabitex MbH filed an objection to the Ward German patent application. Thus, Stabitex MbH knew of the existence of the Ward patent prior to commencement of its infringment by entering into a relationship with Omid to market Stabitex in the United States.

20. Dix testified that upon learning of plaintiff's German patent application, he consulted his German patent attorney who advised him to object to the patent on the grounds that it did not reach inventive level worthy of patent protection. Dix further testified that before selling Stabitex to Omid in the United States, he consulted his German patent attorney and was advised that this would not violate plaintiff's patent rights as long as he limited his activities to the sale of his product to Omid in Germany. Dix did not obtain an opinion from counsel regarding the effect of his dealings with Omid under United States patent law nor did he obtain an opinion from competent counsel on the issues of validity or infringement of the Ward patent under United States patent law. Dix did not limit his dealings with Omid to the mere sale of Stabitex to Omid in Germany, but actively assisted Omid in marketing his product in the United States, including the preparation of advertising materials in English which he supplied to Omid and including an agreement to pay part of Omid's legal expenses in defending the plaintiff's patent infringement suit.

21. Both Omid and Stabitex MbH were notified in February, 1984 that plaintiff regarded their sale of Stabitex in the United States as an infringement of the Ward patent. Karkouti then sought the advice of competent patent counsel and was given an oral opinion that under the doctrine of file wrapper estoppel, Stabitex did not infringe the Ward patent because the Stabitex product had adhesive in the interstitial spaces of the fabric grid. Karkouti shared this legal opinion with Dix, who claims that he also relied upon it in continuing to sell Stabitex to Omid.

22. The infringement by Omid, ORSH and Stabitex MbH was willful. Omid relied on an oral opinion which was limited to the issue of infringement. Omid did not seek an opinion on the issue of validity and there was no research of prior art. The issue of infringement was of sufficient importance that a prudent person would have requested a written opinion. The opinion on infringement was based solely upon the issue of file wrapper estoppel and the presence of adhesive in the interstitial spaces in the fabric grid in the Stabitex product. There was no basis for a good faith belief that the interstitial adhesive served any function and no tests were performed to investigate this fact. Stabitex MbH relied only on the oral advice of a German patent attorney, and the secondhand advice of Omid's counsel. A German patent attorney is not the equivalent of an American patent attorney and is not competent to express an opinion on either validity or infringement of a United States patent. Stabitex MbH did not follow the

advice of its German patent attorney, but instead directly involved itself in the marketing of its product in the United States. This is a proper case for increased damages under 35 U.S.C. § 284 and the Court will exercise its discretion under that statute and will increase plaintiff's damages by fifty (50%) percent.

■ 23. This is an exceptional case within the meaning of 35 U.S.C. § 285. Defendant Stabitex MbH copied plaintiff's product and, after knowledge of plaintiff's United States patent rights, actively encouraged and assisted Omid in selling the product in the United States. Omid, with knowledge of plaintiff's patent rights, nevertheless proceeded to sell substantial quantities of the infringing product in the United States without a substantial basis for a belief that such sales did not constitute an infringement of the plaintiff's patent. The infringement by all defendants was willful and intentional. Plaintiff is entitled to recover his attorneys fees and expenses under the provisions of 35 U.S.C. § 285.

24. At trial, plaintiff introduced evidence of the following attorney's fees and expenses: (1) For the services of the firm of Stoll, Wilkie, Previto & Hoffman, the sum of $122,890.00 representing approximately 700 hours by lead counsel at the rate of $175.00 per hour and 111 hours by associate counsel at the rate of $100.00 per hour and litigation expenses incurred by this firm in the amount of $10,076.30; (2) For the services of local counsel Kremblas, Foster & Millard the sum of $11,115.00 representing 111 hours at the rate of $100.00 per hour and expenses in the amount of $81.25. The Court finds that the number of hours, hourly rates and the total amount of attorneys' fees and expenses are reasonable. Since the trial, pursuant to the agreement of counsel and with the consent of the Court, plaintiff has submitted evidence of additional legal fees and expenses for the period April 1, 1988 to June 1, 1988 including $41,375.00 in fees for the firm of Stall, Wilkie, Previto & Hoffman and $6,827.97 in expenses incurred by that law firm; additional associ-

ate counsel fees in the amount of $4,902.00 and additional associate counsel expenses in the amount of $2,592.10. In a response filed on June 8, 1988, defendants did not question the reasonableness of these fees and expenses but did take exception to the inclusion of fees for a separate action against Mr. Karkouti and expenses for foreign taxes. The Court notes that neither of these items were included in the amounts requested by the plaintiff, although they were referenced in the supporting documentation. The Court has reviewed the additional attorneys' fees and expenses and finds that they are reasonable. Accordingly, plaintiff is awarded the sum of One Hundred Ninety–Nine Thousand Eight Hundred Fifty Nine Dollars and Sixty–Two Cents ($199,859.62) for attorneys fees and expenses.

CONCLUSIONS OF LAW

1. Pursuant to 35 U.S.C. § 284, a patent owner is entitled to damages that are adequate to compensate for the infringement. Such damages "constitute the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred". *Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.,* 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964).

■ 2. The patent owner's burden of proof is not absolute but is a burden of reasonable probability. *Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1065 (Fed.Cir.1983); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.,* 761 F.2d 649, 653 (Fed.Cir.1985).

■ 3. When a patent owner would have made the sale of a product "but for" the infringement, an award based on his lost profits is appropriate. *Paper Converting Machine Co. v. Magna–Graphics Corp.,* 745 F.2d 11, 21 (Fed.Cir.1984). An award of lost profits requires: 1) a showing that the patent owner would have made the sale but for the infringement, and 2) proper evidence of the amount of lost profits. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863 (Fed.Cir.1985).

4. In *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.1978), the Sixth Circuit Court of Appeals set forth a four-part test for the recovery of lost profits holding that the patent owner is entitled to his lost profits upon proof of: 1) demand for the patented product, 2) absence of acceptable non-infringing substitutes, 3) his manufacturing and marketing capability to exploit the demand and, 4) the amount of profit he would have made. *Id.* 575 F.2d at 1156. The Federal Circuit has approved the *Panduit* test but has indicated that it is not the exclusive test for the recovery of lost profits. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 864 n. 9 (Fed.Cir.1985). The facts of this case satisfy the *Panduit* test and plaintiff is entitled to recover his lost profits.

5. Pursuant to 35 U.S.C. § 284, the damages awarded to a patent owner should not be less than a reasonable royalty. The setting of a reasonable royalty after infringement cannot be treated as the equivalent of ordinary royalty negotiations among truly willing patent owners and licensees. *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir.1978). The amount of a reasonable royalty after infringement turns on the facts of each case and the relevant facts include: what plaintiff's property was, to what extent defendant has taken it, its usefulness and commercial value as shown by its advantages and the extent of its use, and the commercial situation. *Id.* 575 F.2d at 1159. In this case, a reasonable royalty would have been nearly equal to the profit plaintiff could have made in selling Loklift to Omid at $3.50 per square yard from 1983 to 1986 and at $4.168 per square yard in 1986 and 1987.

6. Prejudgment interest may be assessed after damages have been found. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). However, prejudgment interest cannot be assessed on the increased or punitive portion of the damage award. *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380 (Fed. Cir.1983). Interest on lost profits should be compounded. *Dynamics Corp. of America v. United States*, 766 F.2d 518, 520 (Fed.Cir.1985).

7. Pursuant to 35 U.S.C. § 284, the Court is authorized to increase the damages up to three times the amount found or assessed. The Court may exercise its discretion to increase damages when the infringement is willful and deliberate and the factor by which damages are multiplied is within the discretion of the court. *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 464 (Fed. Cir.1985); *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 665 (10th Cir.1980). The willfulness of infringement is determined by reviewing the totality of the circumstances. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed.Cir.1983). Factors which a court may properly consider in determining the issue of willfulness include: 1) whether the infringing product is a copy of the patented product, *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970 (Fed.Cir.1986); 2) whether or not the infringer initiated or continued the infringement after knowledge of a patent, *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734 (Fed.Cir.1984); 3) failure to obtain competent legal opinions on validity and infringement, *Kori Corp. v. Wilco Marsh Buggies & Draglines*, 761 F.2d 649 (Fed. Cir.1985); and 4) defenses bordering on the frivolous, *Kaufman Co., Inc. v. Lantech, Inc., supra*. The infringement by Stabitex MbH, Omid and ORSH was willful and deliberate.

8. 35 U.S.C. § 285 provides:

The court in exceptional cases may award reasonable attorneys fees to the prevailing party.

The prevailing party has no right to attorneys fees and such an award must be the exception and not the rule. *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688 (Fed.Cir.), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Q–Panel Company v. Newfield*, 482 F.2d 210, 211 (10th Cir.1973). A finding that infringement was willful and deliberate may justify

1236

an award of attorneys fees to the plaintiff depending on the circumstances of a particular case. *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 667 (10th Cir.1980).

 9. Where the infringement is the result of the participation and combined actions of the defendants, they are joint infringers and are jointly liable for the infringement. *Shields v. Halliburton Co.*, 493 F.Supp. 1376 (W.D. Louisiana 1980); *New Jersey Patent Co. v. Schaeffer*, 159 F. 171 (E.D.Pa.1908), *aff'd* 178 F. 276 (3d Cir. 1909).

 10. The defendants are jointly and severally liable for the compensatory damages which include the loss of profits awarded pursuant to 35 U.S.C. § 284, and prejudgment interest on that amount. Defendants were equally culpable in the willful violation of the plaintiff's patent rights and the Court will apportion one-half of the increased damages and attorneys fees to defendants Omid and ORSH and one-half to defendant Stabitex MbH.

## CALCULATION OF DAMAGES

### I. *Lost Profits*

Stabitex MbH sales to Omid in square yards:

| | | |
|---|---|---|
| 1983 | 9,826 × 2.242 | $ 22,029.89 |
| 1984 | 63,675 × 2.242 | 142,759.35 |
| 1985 | 41,663 × 2.242 | 93,408.45 |
| 1986 (½) | 34,923.5 × 2.242 | 78,298.49 |
| 1986 (½) | 34,923.5 × 2.910 | 101,627.38 |
| 1987 | 34,924 × 2.910 | 101,628.84 |
| | Total Lost Profits | $539,752.39 |

### II. *Prejudgment Interest*

1983 lost profits at 10% from 12/31/83 to 6/15/88 compounded annually $11,701.30

1984 lost profits at 10% from 12/31/84 to 6/15/88 compounded annually $55,955.93

1985 lost profits at 10% from 12/31/85 to 6/15/88 compounded annually $24,792.28

1986 (½) lost profits at 10% from 6/30/86 to 6/15/88 compounded annually $16,278.17

1986 (½) lost profits at 10% from 12/31/86 to 6/15/88 compounded annually $15,282.73

1987 lost profits at 10% from 13/31/87 to 6/15/88 compounded annually $4,654.60

Total Prejudgment Interest $128,665.01

### III. *Increased Damages Under 35 U.S.C. § 284*

(½ of I) $269,376.46

### IV. *Attorneys Fees and Expenses*

Total $199,859.62

Judgment against Omid, ORSH and Stabitex MbH

Total lost profits and total prejudgment interest $668,417.40

Additional judgment against Omid and ORSH (½ of III and IV) $234,618.04

Additional judgment against Stabitex MbH (½ of III and IV) $234,618.04

It is so ORDERED.